No. 2--00--0074

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

MARVEL OF ILLINOIS, INC., and ) Appeal from the Circuit Court

MARVEL ENGINEERING TRUST, ) of Du Page County.

)

Plaintiffs-Appellants,           
       )

) 

v. ) 
No. 99--L--0193

)

MARVEL CONTAMINANT CONTROL )

INDUSTRIES, INC., FOREST      )  

G. NICCUM, DORIS NICCUM,        ) 

SHARON KIRBY, and FRANK KIRBY,  ) 
                                            )   

Defendants-Appellees
 ) 

) 
Robert K. Kilander,

(John R. Meyer, 
Appellant).
 ) 
Judge, Presiding
 

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court: 

Plaintiffs, Marvel of Illinois, Inc. (Marvel of Illinois), and Marvel Engineering Trust (Marvel Engineering Trust), appeal the circuit court's order granting defendants' motion to dismiss plaintiffs' complaint against Marvel Contaminant Control Industries, Inc. (MCC); Forest G. Niccum (Niccum); Niccum's wife, Doris Niccum; Sharon Kirby; and Frank Kirby and imposing sanctions against plaintiffs and their attorney, John R. Meyer (Meyer).  Meyer appeals the circuit court's order imposing sanctions against him individually.  We affirm and grant defendants' request for sanctions against plaintiffs and Meyer individually for bringing a frivolous appeal.  

BACKGROUND 

In 1989, Niccum, MCC, and Marvel Engineering Company (Marvel Engineering Company) filed suit in the United States District Court for the Northern District of Illinois against Meyer, individually and as trustee of MEC Trust No. 1 (MEC Trust); Marvel Industries, Inc. (Marvel Industries); MEC Enterprises (MEC); and certain other companies not relevant to this appeal.  Niccum claimed that Meyer exercised undue influence in obtaining money and property from the plaintiffs while providing them legal services.  Jurisdiction was alleged under the Racketeer Influenced and Corrupt Organization Act (18 U.S.C. §1961 
et seq.
 (1988)).  The one claim of undue influence relevant to this appeal involved the claimed purchase of Marvel Engineering Company's stock from Niccum by Meyer's company, MEC, pursuant to a stock purchase agreement dated December 30, 1985.   

The chain of events leading to the agreement commenced in 1980 when Marvel Engineering Company, one of Niccum's companies, gave  Niccum a $20 million note.  In 1982, Niccum's attorney, Meyer, informed him that the Internal Revenue Service might consider the note a taxable dividend.  To prevent this, Niccum assigned the note to another one of his companies, MCC.  To further distance Niccum from Marvel Engineering Company, Meyer recommended that Niccum sell the company to MEC, the entire stock of which was held by Meyer in his family trust.  Niccum initially declined, but three years later, in 1985, he agreed.

The stock purchase agreement between Niccum and MEC called for MEC to buy the stock of Marvel Engineering Company for $5,000 down with a $995,000 note to cover the balance.  Although ownership of the stock would pass to MEC, the agreement required Niccum to manage the operations of Marvel Engineering Company, apparently because Meyer had no knowledge of business management.  MEC was to pay the note in installments of $25,000 per quarter for 10 years.  Another condition of the sale was Marvel Engineering Company's satisfaction of a note to MCC for about $10 million.  The parties signed a pledge agreement to ensure satisfaction of the notes.  Under the pledge agreement, Niccum was to give certificates representing Marvel Engineering Company's stock to an escrow holder on the day of sale.  Until MEC made all the payments, the escrow holder would keep the certificates and Niccum would retain the right to vote the shares. If MEC defaulted, the escrow holder would return the certificates to Niccum, who, as a secured party, could then sell them.   

The sale, however, never was completed.  Niccum never gave the stock certificates to the escrow holder but retained them in a vault he controlled.  MEC made the $5,000 down payment but made no payments under the $995,000 note.  On March 23, 1988, Niccum sent MEC a letter stating that the stock purchase agreement was "null and void and of no force or effect" due to MEC's failure to make payments.  Meyer ignored the letter, and Niccum sued in federal court to have the agreement declared void.   

Meyer filed several counterclaims on behalf of himself and certain companies.  Count II, brought by MEC against Niccum, alleged that Niccum breached the stock pledge agreement by treating Marvel Engineering Company's assets as his personal assets and by failing to place the stock certificates in escrow. 

[The following material is nonpublishable under Supreme Court Rule  23.]
    

Count II specifically provided, in relevant part: 

"42. Upon information and belief, Forest G. Niccum has

breached the conditions of the Pledge Agreement on his part in the following respects: 

(a) Withdrew for his own use and benefit, sums of money from Marvel Engineering Company in excess of those due under the Pledge Agreement;

(b) Withdrew sums of money in excess of those due under the  Pledge Agreement for payment of personal expenses; for payment of expenses owed by the corporate Counter-Defendants and for purchase of assets for the corporate Counter-Defendants.

(c) By failing to deliver any and all stock certificates of Marvel Engineering Company to MEC Enterprises, Inc. as required the Pledge Agreement."   

[The preceding material is nonpublishable under Supreme Court Rule 23.]  

In count III, MEC alleged that Niccum "breached the Stock Purchase agreement by failing to deliver the stock certificates of Marvel Engineering Company and accompanying assignments thereof to MEC, Inc."  In count V, Meyer, Marvel Industries, and MEC alleged that Niccum and his wife "wrongfully and unlawfully converted to their own personal use and for the benefit of corporate Counter-Defendants, sums of money from Marvel Engineering Company in excess of those due Forest G. Niccum under the written Pledge Agreement."

On April 9, 1992, Meyer filed for bankruptcy, triggering an automatic stay of the district court proceedings.  Niccum then filed an adversary complaint in Meyer's bankruptcy case, realleging therein the plaintiffs' allegations in the district court litigation.  The district court withdrew Niccum's adversary proceedings from the bankruptcy court and consolidated it with the federal suit.  On October 1, 1993, the district court granted Niccum's motion to default all defendants except Meyer and to strike the counterclaims of Marvel Industries and MEC.  On July 25, 1994, the district court granted Niccum's motion for summary judgment on his undue influence claims, finding that Meyer had failed to overcome the presumption under Illinois law that an attorney has defrauded his client when he engages in a transaction with the client and is benefitted thereby.   
Niccum v. Illinois
, 171 B.R. 828, 834 (N.D. Ill. 1994).  The court held that the stock purchase agreement was "voidable" and that Niccum was entitled to the remedy of choosing between rescinding the transaction or electing damages for the difference between the value he actually received and the value he would have received but for Meyer's misconduct.  
Niccum
, 171 B.R. at 831, 834.   

 The court then remanded the case to the bankruptcy court for a determination of dischargeability and appropriate relief.  The bankruptcy court found that Meyer had paid no consideration for the stock.  The court determined that Meyer owed $14,520,743.17 as the fair market value of the stock on December 31, 1985.  The court further held that this debt was nondischargeable.  

Meyer appealed to the district court, contending that Niccum never relinquished ownership of Marvel Engineering Company because he never transferred his stock certificates to an escrow holder pursuant to the purchase agreement.  Meyer argued that awarding Niccum damages for the stock sale when Niccum retained ownership of the stock gave Niccum a double recovery.  Accepting this argument, the district court vacated the damages award and retried the issue of ownership of the stock itself.  
In re Meyer
, No. 95--C--6639, slip op. at  3 (N.D. Ill. September 20, 1996).  Following a bench trial, the district court found, in relevant part:  

"8. Forest Niccum is the owner of all stock of Marvel

Engineering because (a) he has at all times operated, managed, and controlled the assets or properties of Marvel Engineering; (b) he did not complete the stock sales transaction; and (c) he declared the stock transaction to be null and void due to default."  
In re Meyer
, No. 95--C--6639, slip op. at 16 (N.D. Ill. April 30, 1997). 

The court also found that MEC had made no payments under the $995,000 note.  Based on these findings, the court held that Niccum was entitled not to the value of the stock at the time of sale as determined by the bankruptcy court, but to $103,000, representing the amount due from Meyer under the stock transaction.  The United States Court of Appeals for the Seventh Circuit affirmed, observing that the district court "reached a well-reasoned conclusion that Niccum retained ownership of Engineering."  
In re Meyer
, Nos. 97--2318, 97--2492, 98--2090 cons., slip op. at 4 (7th Cir. August 21, 1998).  The court declined to address Meyer's appellate arguments because they were "either frivolous or waived."    

Plaintiffs  filed the complaint at issue on February 18, 1999.  They asserted five counts, each of which is labeled as "defalcation, breach of fiduciary duty and breach of contract."  The factual premises for the claims are that in 1988, prior to the federal litigation, MEC was dissolved involuntarily by the State of Nevada.  MEC assigned its rights to the stock of Marvel Engineering Company under the purchase agreement to Marvel Engineering Trust, which in turn transferred them to Marvel of Illinois.  Marvel of Illinois then merged with Marvel Engineering Company.   Plaintiffs submitted a certificate of ownership and merger to the trial court that purportedly effectuated the merger.

Plaintiffs asserted that, under the contracts between Niccum and MEC, Niccum "had certain fiduciary and contractual duties and responsibilities to Marvel Engineering Trust and its predecessors," including the "duties and responsibilities to Marvel Engineering Trust to supervise and manage the assets and operations of Marvel Engineering Company in a prudent manner."  Plaintiffs also contended that Niccum, Doris Niccum, and Sharon Kirby, as officers, directors, managers, or employees of Marvel Engineering Company prior to its merger into Marvel of Illinois, "have had fiduciary and contractual duties and responsibilities, among others," to Marvel Engineering Company and Marvel Engineering Trust and its predecessors "with regard to the assets and operations" of Marvel Engineering Company.   

Plaintiffs' claims are virtually identical to those brought by the defendants in the federal litigation, 
i.e.
, that defendants improperly treated the assets of Marvel Engineering Company as their personal assets. 

[The following material is nonpublishable under Supreme Court Rule 23.]
 

Plaintiffs summarized their allegations of wrongdoing as follows: 

"16. [The defendants] breached their fiduciary and

contractual duties and responsibilities, among others, with regard to the assets, operations, and properties of Marvel Engineering Company by transferring assets and funds of Marvel Engineering Company to themselves and by treating the assets, operations, and properties of Marvel Engineering Company as their own, rather than treating them as the assets, operations, and properties of Marvel Engineering Company.

 17. Forest G. Niccum breached the Stock Purchase

Agreement and the Pledge Agreement by taking assets and funds from Marvel Engineering Company and by treating the assets, operations, and funds of Marvel Engineering Company as if they were his own, rather than treating them as the assets, operations, and properties of Marvel Engineering Company."

[The preceding material is nonpublishable under Supreme Court Rule 23]  
 

We need not detail each of plaintiffs' individual allegations to dispose of this appeal.  We note only that the claims allege  various specific misuses of Marvel Engineering Company funds by Niccum between the mid-1980s and late 1990s.     

[The following material is nonpublishable under Supreme Court Rule 23.]

Shortly after plaintiffs filed their complaint, defendants removed the case to federal court, invoking the bankruptcy court's jurisdiction to effectuate its orders.  The plaintiffs moved for remand.  For reasons unrelated to this appeal, the district court found no federal jurisdiction over the case and remanded it to the state trial court.

[The preceding material is nonpublishable under Supreme Court Rule 23.]
  

On defendants' motion, the trial court dismissed plaintiffs' complaint as barred by 
res judicata
.  The court concluded that plaintiffs were in privity with the defendants in the federal suit for two reasons.  First, the court found that "Meyer, both on behalf of himself and as attorney for the corporate parties, continually represented that MEC Inc. and he, himself, were the proper parties in interest under the Stock Purchase Agreement."  Plaintiffs, the court concluded, were simply Meyer and his wife "under different names."  Second, the court found that MEC's rights under the stock purchase agreement were extinguished by the federal court's declaration that the agreement was voidable by Niccum due to Meyer's undue influence and, in fact, had been rescinded by the parties.  Thus, the court reasoned, there were no rights under the stock purchase agreement upon which plaintiffs could sue.  

On defendants' motion, the court imposed sanctions against plaintiffs and Meyer individually pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).  The court found that plaintiffs' suit had no basis in law or fact and was filed for an improper purpose.  The court supported the sanctions with the following factual findings:

"(a)  John R. Meyer represented under oath to the Federal Court, both in deposition and in interrogatory, that in 1991 the MEC Trust No. 1 owned the stock of MEC.

(b) In its final determination, the Federal Court declared that Niccum, and not MEC, owned all of the MEC stock because the sale was either not completed or rescinded. 

(c) John R. Meyer has apparently manipulated the purported ownership of MEC after the fact, and now takes a diametrically inconsistent position as to who owned the stock in 1991.  By so doing he has attempted to boot strap that contrivance into a [
sic
] ownership claim of the stock of MEC. 

(d)  Plaintiffs' and Meyer's present assertion is found to be in bad faith, both because of Meyer's prior statement, and because of the Federal Court's ruling.

(e)  The Court further finds that John R. Meyer's self-declared merger of Marvel Engineering Company, a company over which neither he or his company, Marvel of Illinois Inc., has any ownership or control, was both wrongful and unsupported by fact or law.  Rather, that merger stands in direct violation of the Federal Court's finding of ownership by Mr. Niccum." 

The court awarded sanctions in the amount of $1,564.67 for costs and disbursements, and $49,827.50 for attorney fees.  

In this appeal, plaintiffs argue that the trial court erred in finding their claims barred by 
res judicata
 because (1) Marvel of Illinois' claims originated with Marvel Engineering Company and are not barred because Marvel Engineering Company, being Niccum's coplaintiff in the federal litigation, did not bring any claims against Niccum in that litigation; (2) the federal court's judgment concerning the stock purchase agreement is not binding on MEC and MEC Trust because neither was a party to the federal litigation at that time; (3) the federal court's judgment that Niccum is the owner of Marvel Engineering Company because the stock purchase agreement was rescinded is not binding because all amounts MEC owed under the agreement have since been paid; and (4) Marvel of Illinois and Marvel Engineering Trust are not Meyer's privies because Meyer was a party in the district court only as an individual, and his mere status as a trustee of Marvel Engineering Trust and an officer of Marvel of Illinois does not put him in privity with those entities.   

Plaintiffs also contend that the federal court's judgment that Niccum owned Marvel Engineering Company violated the due process rights of Marvel of Illinois and Marvel Engineering Trust because their privies were not then parties to the federal litigation.  Lastly, plaintiffs  argue that the imposition of sanctions against them was inappropriate because their claims were not clearly barred by 
res judicata
.  Attorney Meyer has also disputed the sanctions ordered against him individually.   

In response, defendants argue that 
res judicata
 applies against plaintiffs because they have alleged the same improprieties of Niccum regarding the same stock purchase and pledge agreements as did the defendants in their counterclaims in the federal lawsuit.  Further, defendants submit, Marvel of Illinois and Marvel Engineering Trust are in privity with MEC and MEC Trust because Meyer, against whom the federal court entered its judgment declaring the Marvel Engineering Company sale void for undue influence and determining that Niccum owned Marvel Engineering Company, is trustee of Marvel Engineering Trust and MEC Trust as well as the president of Marvel of Illinois and MEC.  Defendants also assert that plaintiffs' claims of breach of contract and breach of fiduciary duty are barred under their respective statutes of limitations.   Finally, defendants argue that the trial court's imposition of sanctions against plaintiffs and Meyer was adequately supported by the record; defendants also request that plaintiffs and Meyer be sanctioned for bringing this appeal.   

ANALYSIS

I. Dismissal of Plaintiffs' Claims as Barred by
 
Res
 
Judicata

Section 2--619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2--619(a)(4) (West 1998)) permits a court to dismiss an action on the grounds that it "is barred by a prior judgment."  Section 2--619(a)(4) incorporates the doctrine of 
res judicata
, which has three essential elements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of  cause of action; and (3) an identity of parties or their privies.  
People ex rel. Burris v. Progressive Land Developers, Inc.
, 151 Ill. 2d 285, 294 (1992).  If all three elements are met, then the prior action is conclusive as to all issues that were, or properly might have been, raised in that action.  
Burris
, 151 Ill. 2d at 294.  Review of a trial court's application of 
res judicata
 under section 2--619 is 
de novo
.  
American National Bank & Trust Co. v. Village of Libertyville
, 269 Ill. App. 3d 400, 403 (1995). 

     Based on our independent assessment of plaintiffs' complaint and the record, we find that the trial court properly dismissed it as obviously barred by the federal district court's judgments in 1994 and 1997 (1) that the agreement between Niccum and MEC for the sale of Marvel Engineering Company's stock was voidable due to Meyer's undue influence, (2) that Niccum was not entitled to market damages for Meyer's misconduct because the contract was bilaterally rescinded by both Meyer's failure to make any installment payments and Niccum's failure to put the stock certificates in escrow, and (3) that Niccum never relinquished ownership of Marvel Engineering Company.  Plaintiffs concede 
sub silentio
 that these judgments were final judgments rendered by a court of competent jurisdiction.     Moving on to the second element of 
res judicata
, we find that plaintiffs' claims clearly concern the same cause of action resolved in the federal litigation.  In determining identity of causes of action, Illinois courts employ a "transactional test."  
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 311 (1998).  Under this test, separate claims are considered the same cause of action if they arise from a single group of operative facts even if the evidence needed to support the claims does not substantially overlap.  
River Park
, 184 Ill. 2d at 311.   

Plaintiffs' claims are based entirely on Niccum's alleged mishandling and diversion of Marvel Engineering Company funds.  This conduct, plaintiffs  argue, violated contractual and fiduciary obligations owed them by Niccum.  These obligations were created by the stock purchase agreement, which not only required Niccum to put the stock certificates in escrow pending MEC's satisfaction of the promissory note but also vested Niccum with the continued management of Marvel Engineering Company even after the notes were satisfied. 

Apparently lost on the plaintiffs is the fact that the purchase agreement upon which they base their claims was exhaustively litigated in federal court upon Niccum's complaint that the agreement was the product of attorney Meyer's self-dealing while he was Niccum's lawyer.  Ultimately finding that the agreement was vitiated by Meyer's undue influence, the federal court gave Niccum the option of rescinding the contract or receiving damages.  Thus, not only are plaintiffs' claims based squarely on the same set of operative facts litigated previously in federal court, 
i.e.
, the agreement to purchase the stock of Marvel Engineering Company, but also plaintiffs have futilely sought to vindicate the buyer's rights in a stock purchase agreement that a court has determined was bilaterally rescinded and, further, was never enforceable by the buyer due to his own misconduct.     Moving to the last element of 
res judicata
, we  find identity between plaintiffs and the defendants in the federal litigation, notwithstanding plaintiffs' best attempts to obscure the issue.  Meyer's creation of the dummy entities Marvel of Illinois and Marvel Engineering Trust was a transparent attempt to avoid 
res judicata
.  As with nearly all of Meyer's legal maneuvers in both this litigation and the federal litigation, the attempt was ineffectual, for in a privity analysis, "[i]t is the identity of interest that controls ***, not the nominal identity of the parties."  
Burris
, 151 Ill. 2d at 296.  Privity exists between two parties who adequately represent the same legal interests.  
Burris
, 151 Ill. 2d at 296.       

Plaintiffs' statements in their brief and complaint concerning the origin of Marvel of Illinois and Marvel Engineering Trust resolve this issue for us.  Marvel Engineering Trust, plaintiffs  explain, is the successor of MEC's rights under the stock purchase agreement.  Marvel Engineering Trust established Marvel of Illinois and transferred to Marvel of Illinois all of MEC's rights to the ownership of Marvel Engineering Company.  Marvel of Illinois, plaintiffs  explain, then merged Marvel Engineering Company into itself.  Marvel Engineering Trust is the owner of 100% of the issued and outstanding stock of Marvel of Illinois.  Plaintiffs' intent to establish this lineage between them and Marvel Engineering Company is apparent in the statement in their brief that "Marvel of Illinois asserted in this action the claims that originated with Marvel Engineering Company."   

In admitting that they are the assignees of MEC's rights under the stock purchase agreement, plaintiffs have placed themselves squarely within the umbra of 
res judicata
.  " 'Privity' for 
res judicata
 or collateral estoppel 
purposes contemplates a mutual or successive relationship to some property rights which were the subject matter of the prior litigation."  
Fried v. Polk Brothers
, 
Inc.
, 190 Ill. App. 3d 871, 879 (1989).  As the assignees of MEC's rights under the stock purchase agreement, Marvel Engineering Trust and Marvel of Illinois are in privity with MEC and its owner, Meyer.  Perhaps plaintiffs should have been careful what they wished for.  The rub for them is that MEC 
had
 no rights under the agreement to transfer because the federal court ruled not only that Meyer's misconduct rendered the agreement voidable by Niccum but also that the agreement had in fact been rescinded.  As the assignees of MEC, Marvel of Illinois and Marvel Engineering Trust received no rights under the agreement because MEC had no rights to give.  An assignee can receive no greater rights than the assignor possessed. See 
Diversified Financial Systems, Inc. v. Boyd
, 286 Ill. App. 3d 911, 915 (1997); 
Stavros v. Karkomi
, 39 Ill. App. 3d 113, 123 (1976). 

Plaintiffs' arguments that 
res judicata
 does not apply are sorely misconceived.  First, the fact that Marvel Engineering Company never raised a claim against Niccum in federal court because they were coplaintiffs is simply irrelevant.  As noted, privity hinges on the identity of interests between parties in successive proceedings, not on the alignment of the nominal parties to the first proceeding.  See 
Burris
, 151 Ill. 2d at 296.  The pivotal question is not whether Marvel Engineering Company was a party to the federal suit or what claims it raised therein, but whether plaintiffs' interest were adequately represented in the proceeding that led to a judgment concerning the ownership of Marvel Engineering Company's stock.  We reasoned above that plaintiffs' interests were indeed adequately represented.  

Second, although plaintiffs are correct that MEC and MEC Trust were not parties to the federal litigation when the court entered its judgment that Niccum was the rightful owner of Marvel Engineering Company, this fact also is irrelevant to our analysis.  Our concern is whether plaintiffs' interests are identical with those of the defendants in the federal litigation, not who was nominally involved in that litigation.   The judgment against Meyer by the federal court was a judgment determining the rights of Meyer's company, MEC, under the stock purchase agreement, and plaintiffs are in privity with Meyer as being the assignees of those rights.   

 Third, we simply are bewildered by plaintiffs' claim that all amounts due under the stock purchase agreement have now been paid.  We do not see how plaintiffs can square this assertion with the federal court's finding that the stock purchase agreement had been bilaterally rescinded by the parties--or, more importantly, that attorney Meyer's self-dealing rendered the agreement voidable by Niccum.  If that ill-conceived contract has been resurrected, it  surely is not apparent from the record. 

Lastly, there is no merit to plaintiffs' claim that privity

does not exist between Meyer and Marvel of Illinois and Marvel Engineering Trust.  Meyer was, of course, the only party against whom the court judged that Niccum was the rightful owner of Marvel Engineering Company, but that is not dispositive.  We are concerned here with the continuity of interests, not the continuity of the nominal parties, between this litigation and the federal litigation.  Plaintiffs have admitted that they are the assignees of MEC's rights under the stock purchase agreement.  This suffices to establish privity between plaintiffs and Meyer, MEC's owner.  See 
Burris
, 151 Ill. 2d at 296.  Noting that Meyer controlled MEC, the United States Court of Appeals for the Seventh Circuit considered them the same entity in reviewing the district court judgment in Niccum's lawsuit.  See 
In re Meyer
, Nos. 97--2318, 97--2492, 98--2090 cons., slip op. at 1 n.2 (7th Cir. August 21, 1998).  We, too, regard MEC and Meyer as the same entity.  We need not and will not dignify Meyer's attempts to distance himself from the federal court judgment by spending any further time dismantling the facade he has erected with dummy entities.  Plaintiffs are fantasizing if they believe that the absence of Marvel of Illinois and Marvel Engineering Trust from the federal litigation meant that MEC somehow sprung rights to the stock of Marvel Engineering Company 
ex nihilo
 after the federal court declared those rights nonexistent due to Meyer's conflict of interest.

    It is important to note that plaintiffs argued to the trial court that they are not bound by the federal court's determination of ownership in the stock of Marvel Engineering Company because, in 1988, before the federal litigation began, MEC was dissolved by the State of Nevada and its rights under the stock purchase agreement were assigned to Marvel Engineering Company.  The dissolution of MEC and the assignment of its rights under the stock purchase agreement, plaintiffs argued, insulated those rights from the subsequent federal court judgment.

Plaintiffs do not bring this argument on appeal.  Perhaps they have finally recognized the argument's futility given that its premises directly contradicted Meyer's sworn assertions in the federal litigation that MEC was then still in existence.  Or, perhaps they are sheepish because the trial court sanctioned them for this flagrant about-face.    

For the reasons stated above, we find plaintiffs' claims  barred by 
res judicata
.  We do not address plaintiffs' due process argument because the cases they cite all concern failures by courts to obtain personal jurisdiction over parties, and plaintiffs do not dispute that the federal court had personal jurisdiction over the defendants in the federal litigation.  Also, as we have found that 
res judicata
 clearly bars plaintiffs' claims, we need not address defendants' argument that the claims are also barred by the applicable statutes of limitations.     

II. Imposition of Sanctions Under Supreme Court Rules 137 and 375  

 Supreme Court Rule 137 provides that a party's signature on a pleading, motion or other paper  

"constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  155 Ill. 2d R. 137.  

A party's violation of the rule may subject it, its attorney, or both to an appropriate sanction, including the award of reasonable attorney fees to the opposing party.  155 Ill. 2d R. 137.  The purpose of the rule is "to prevent a litigant from abusing the judicial process by penalizing the party who brings a vexatious or harassing action without a sufficient legal or factual foundation."  
North Shore Sign Co. v. Signature Design Group, Inc.
, 237 Ill. App. 3d 782, 790 (1992).  An imposition of sanctions must be supported with specific factual findings.  155 Ill. 2d R. 137.  The decision to impose sanctions is committed to the sound discretion of the trial court.  
North Shore
, 237 Ill. App. 3d at 790.   

We find no abuse of discretion in the trial court's decision to impose sanctions against plaintiffs and Meyer individually.  After extensive litigation in federal court, MEC's rights under the stock purchase agreement were determined conclusively.  By merely reiterating the claims that their privies brought before that court years ago, plaintiffs  attempt to relitigate those rights.  Apparently, plaintiffs  thought they would simply cast their lots and try again.  The clarion message of Rule 137, however, is that it is not enough to want to try again.  Plaintiffs have not offered even the inkling of a credible reason to upset the judgment of the federal court.  Like the trial court, we denounce Meyer's brazen "merger" of Marvel Engineering Company into Marvel of Illinois when he knew full well that the former was still owned by Niccum.  Like the trial court, we condemn Meyer's distastefully protean advocacy.  Under oath in federal court, both in deposition testimony and answers to interrogatories, Meyer claimed that in 1991 the stock of MEC was owned by MEC Trust.  In the trial court, however, he flatly contradicted this statement with his assertion that MEC was dissolved by the State of Nevada in 1988 before the federal litigation began.  When the trial court called him on this contradiction, Meyer attempted to explain away his previous sworn statements about MEC with the fatuous suggestion that, although owner of MEC, he did not become aware that the company had been dissolved until 
after
 the federal litigation concluded in 1998.  The trial court was fully within its rights in finding Meyer's machinations offensive to the legal process and worthy of sanction. 

Apparently, the trial court's firm rebuke has only heightened plaintiffs' effrontery, resulting in this appeal.  Unfortunately for us 
and
 them (as we will demonstrate shortly), plaintiffs' claims have no more merit now then they did in the trial court.  We will not tolerate a party using the legal process for vexatious harassment of his opponent nor his wasting  our time by obliging us to review a 1,000-page record crammed with irrelevant documents to state the patently obvious and to refute intentionally misleading argument.  Plaintiffs must understand that using the legal system for sport or harassment carries a price.  

For the reasons stated above, we affirm the trial court's decision to impose sanctions against plaintiffs and attorney John R. Meyer, individually, pursuant to Rule 137.  As plaintiffs do not contest the amount of the sanction, we affirm that amount.  Additionally, because we find that this appeal is frivolous and was  brought in bad faith for an improper purpose, we grant defendants' request under Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)) for a judgment imposing sanctions jointly and severally against plaintiffs and their attorney John R. Meyer, individually, consisting of the reasonable costs and expenses incurred by defendants in defending this appeal, including reasonable attorney fees. 

The judgment of the circuit court of Du Page County is affirmed. 

   
Affirmed.   

COLWELL, P.J., and RAPP, J., concur.