JUDITH MINER, Agent of the Beneficiaries of Cosmopolitan National Bank, as Trustee, Plaintiff-Appellant and Cross-Appellee, v. FASHION ENTER-PRISES, INC., *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division) No. 1—00—3746

Opinion filed July 15, 2003.

406

Miner, Barnhill & Galland (Judson H. Miner and Carolyn Shapiro, of counsel), and Law Offices of Arnold H. Landis, both of Chicago, for appellant.

Canel, Davis & King, of Chicago (Peter M. King, Leslie F. Notaro, and David J. Adams, of counsel), for appellees.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Judith Miner, as agent of the beneficiaries of Cosmopolitan National Bank, as trustee under trust No. 23421 (trust), appeals from an order of the circuit court of Cook County dismissing the trust's five-count second amended complaint, on the basis of *res judicata*, the terms of a lease, and factual insufficiency. The trust contends the trial court erred in dismissing the complaint, because (1) *res judicata* does not bar a judgment creditor from bringing a new action to pierce the corporate veil of a judgment debtor, (2) *res judicata* does not bar a lessor from filing more than one action for damages after its lessee abandons the property, (3) the lease at issue did not relieve the lessee's parent corporation from liability for the lessee's judgment debt, and (4) the allegations of fraud in the negotiations and performance of the lease were factually sufficient to state a claim. The subsidiary corporation, judgment debtor Karen Lynn, Ltd. (Karen Lynn), is not a party to this action. The parent corporation, Fashion Enterprises, Inc. (Fashion Enterprises), and its shareholders, Sheldon Needelman and Gary Needelman, are defendants to this action and cross-appeal contending that the trial court abused its discretion when it declined to sanction the trust for its "false" allegations and a "baseless" motion seeking clarification of a court order.

The following pertinent facts are relevant to our discussion of the issues.

In 1988, the trust gave Karen Lynn a 10-year lease beginning on March 1, 1989, for retail space located at 4828-34 West Irving Park Road, Chicago. The stated purpose of the lease was the retail sale of ladies' apparel and accessories. Paragraph 13 provided that if the lessee vacated the premises for a period of 10 days, the lessee's right to possession would terminate. Paragraph 14 provided that if the lessee's right to possession was terminated, the lessor was not obligated to mitigate damages by accepting a new tenant, and the lessee would satisfy any deficiency. An attached rider specified that monthly rent was to be paid in advance on the first of each month and obligated Karen Lynn to pay a portion of the property's annual real estate taxes. Paragraph 2 of the rider, entitled "Assignment," provided that (a) in the event the lease was assigned, Karen Lynn "shall remain liable for

the full covenants and conditions of the Lease," (b) Karen Lynn's parent corporation, Fashion Enterprises, "may occupy the leased premises and conduct a business herein," and (c) Fashion Enterprises "shall not be liable under any provisions of this Lease, regardless of the activity of such parent."

On September 3, 1996, the trust filed an action against Karen Lynn seeking $21,162, consisting of unpaid rent accruing to September 3, 1996, and unpaid 1995 real estate taxes. A default judgment was entered on November 21, 1996, in the amount of $22,162.

The trust indicates it initiated supplementary proceedings to enforce the default judgment and discovered that Karen Lynn had insufficient assets. The supplementary pleadings are not at issue and were not included in the record on appeal.

The record includes a transcript of a citation examination of Gary Needelman conducted by the trust on January 6, 1997. During the examination, Gary Needelman indicated the following. Gary Needelman and Eileen DiLorenzo are the vice presidents of Karen Lynn. Fashion Enterprises owns and has always owned 100% of Karen Lynn's stock. Gary Needelman's father, Sheldon Needelman, is the president of Karen Lynn and the president of Fashion Enterprises. Sheldon Needelman owns all of Fashion Enterprises' stock. Fashion Enterprises sells women's apparel and has five retail locations in the Chicago area. Karen Lynn was formed to sign the lease for the retail space at 4828 Irving Park Road, and Fashion Enterprises owns other corporations that signed the leases for its other retail locations. Other than signing the lease, Karen Lynn did nothing with the property. Karen Lynn did not sell women's apparel and it never had any inventory. Fashion Enterprises, not Karen Lynn, operated the business at the Irving Park location. Karen Lynn was capitalized with roughly $1,000. In mid 1995, Fashion Enterprises increased Karen Lynn's $1,000 bank account balance to $2,500 because Karen Lynn was being charged a maintenance fee. Each month Fashion Enterprises gave Karen Lynn the exact amount of money that Karen Lynn needed to pay the landlord for that month's rent. Karen Lynn received only one check per month and issued only one check per month, and did nothing else. Karen Lynn never had any bills, employees, tax returns, or financial statements, and its minute book did not contain any signed corporate resolutions. Fashion Enterprises liquidated its inventory at the Irving Park location and stopped doing business there during July of 1996. In August (before the trust sued for unpaid rent and taxes on September 3), Karen Lynn issued a check to its attorney for $1,012.50, and returned $1,487.50 to Fashion Enterprises. Karen Lynn was dissolved in 1996 by the Secretary of State.

At the conclusion of the citation examination, Karen Lynn's attorney stated, "And for the record, we've got the last two years of Cosmopolitan [National Bank's] records for Karen Lynn, the minute book, and a couple of manual reports." The trust's attorney responded, "Okay. Good."

The trust indicates that on October 14, 1997, during the supplementary proceedings, it filed a citation to discover the assets of Fashion Enterprises. Further, this citation was actually an attempt to pierce Karen Lynn's corporate veil in order to collect the 1996 judgment. However, after Fashion Enterprises argued it was improper to pierce the corporate veil in supplementary proceedings, the trust nonsuited the supplementary proceedings. Fashion Enterprises indicates that the supplementary proceedings judge remarked that the 1996 action against Karen Lynn would be *res judicata* as to a subsequent action against its parent, Fashion Enterprises.

On November 25, 1998, the trust initiated the instant lawsuit against Fashion Enterprises, Sheldon Needelman, and Gary Needelman. In count I of the new action, the trust alleged Fashion Enterprises was liable for the 1996 judgment because, "Fashion Enterprises formed Karen Lynn to defraud creditors; Karen Lynn had no assets; and corporate formalities were not followed with respect to Karen Lynn." In count II, the trust alleged the Needelmans were liable for the 1996 judgment because they "formed Karen Lynn solely to execute the subject lease and to defraud creditors, *** Karen Lynn had no assets; and corporate formalities were not followed with respect to Karen Lynn."

Fashion Enterprises and the Needelmans moved to dismiss the complaint pursuant to section 2—619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(4) (West 1998) ("the cause of action is barred by a prior judgment")), arguing that the 1996 action operated as *res judicata*. They also contended that the trust's "vexatious and harassing action without legal basis" warranted imposition of sanctions.

Judge Anne Houser entered an order granting the motion to dismiss the complaint "as to breach of lease on *res judicata*," and giving the trust leave to file a first amended complaint. The order does not indicate that the amended pleading was to be limited to any specific legal theory nor does it address the request for sanctions. The proceedings were not recorded by a court reporter.

The trust filed a two-count first amended complaint in which it specified that its claims were not based on breach of the lease. The trust indicated that its claim against Fashion Enterprises was an attempt to pierce Karen Lynn's corporate veil, while its claim against

the Needelmans was an attempt to disregard a corporate entity that was merely an alter ego of a governing or dominating personality. The trust repeated the allegations of the original complaint, but in substantially more detail. Rather than alleging that "corporate formalities were not followed," the trust now alleged that "the formal legal requirements of Karen Lynn were not observed. There have been no meetings of the shareholders or directors of Karen Lynn and no corporate minutes have been maintained." The trust sought $223,805 in damages, consisting of unpaid rent accruing through the end of the lease on February 28, 1999, and unpaid 1995, 1996, and 1997 real estate taxes. It appears the $223,805 figure may have included rent and property taxes awarded in the 1996 judgment, because both claims encompass the 1995 taxes.

Fashion Enterprises and the Needelmans moved to dismiss the first amended complaint, pursuant to sections 2—619(a)(4) and 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615, 2—619(a)(4) (West 1998). Fashion Enterprises again characterized the count against it as one for breach of contract, which was barred by *res judicata*. Fashion Enterprises also contended that Judge Houser never gave the trust leave to plead a contract claim against the corporation and had only allowed the trust to plead a fraud as to the Needelmans. The Needelmans characterized the count against them as one for fraud and argued the claim was factually deficient and precluded by paragraph 2 of the rider.

On January 6, 2000, Judge John Joseph Hynes granted the motion to dismiss and gave the trust leave to amend. On January 26, 2000, the trust filed a motion to reconsider the dismissal of the first amended complaint, arguing that Judge Hynes misinterpreted the extent of Judge Houser's order as to the original complaint. While the motion to reconsider was pending, the trust filed a motion to clarify Judge Houser's order dismissing the original complaint, due to Judge Hynes's reliance on the order. Judge Hynes transferred the motion to clarify for hearing before Judge Houser. However, Judge Houser declined to clarify her order and indicated the parties could prepare bystanders' reports if it became necessary. The parties then returned to Judge Hynes, who denied the trust's motion to reconsider the dismissal of its first amended complaint and gave the trust leave to file a second amended complaint as to "common law fraud."

Next, the trust filed a five-count second amended complaint, in which it incorporated its prior allegations in order to preserve the issues for appeal. It pled claims for the 1996 judgment and the subsequent rent in two separate counts against Fashion Enterprises, based on the corporate veil theory, or in the alternative, in two

separate counts against the Needelmans. In the alternative, the trust asserted common law fraud had been perpetrated in the lease negotiations and performance by material misrepresentation or omission. Judge Hynes struck the fraud count as factually deficient and gave the trust leave to replead that count. After the trust indicated it wished to stand on the second amended complaint, Judge Hynes dismissed the pleading with prejudice, for the reasons previously stated.

Judge Hynes subsequently denied the defendants' petition for sanctions.

This appeal and cross-appeal followed.

The trust's first contention is that the trial court erred in granting the section 2—619(a)(4) motion to dismiss on *res judicata* grounds, because a judgment creditor may choose to file a new action to pierce the corporate veil in order to hold the corporation's individual shareholders and directors liable for the judgment against the corporation. Fashion Enterprises and the Needelmans respond that *res judicata* was triggered by the 1996 action.

■ A motion to dismiss a claim based on section 2—619 of the Code of Civil Procedure (735 ILCS 6/2—619 (West 1998)) admits the legal sufficiency of the plaintiff's allegations but asserts affirmative matter that avoids or defeats the claim stated. *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 526, 778 N.E.2d 291 (2002). The purpose of section 2—619 is to afford litigants a means of disposing of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a trial. *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). Therefore, when ruling on a section 2—619 argument, a trial court may consider pleadings, depositions, and affidavits. *Zedella*, 165 Ill. 2d at 185.

■ If a cause of action is dismissed pursuant to a section 2—619 argument, the questions on appeal are whether a genuine issue of material fact exists and whether the defendants are entitled to judgment as a matter of law. *Zedella*, 165 Ill. 2d at 185-86. The dismissal of a complaint under section 2—619 is subject to *de novo* review. *Peetoom*, 334 Ill. App. 3d at 526.

■ Section 2—619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(4) (West 1998)) permits a trial court to dismiss a cause of action on the grounds that it "is barred by a prior judgment." *Marvel of Illinois, Inc. v. Marvel Contaminant Control Industries, Inc.*, 318 Ill. App. 3d 856, 863, 744 N.E.2d 312 (2001). "Section 2—619(a)(4) incorporates the doctrine of *res judicata*, which has three essential elements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies." *Marvel of Illinois*, 318 Ill. App. 3d

at 863. "If all three elements are met, then the prior action is conclusive as to all issues that were, or properly might have been, raised in that action." *Marvel of Illinois*, 318 Ill. App. 3d at 863.

The trust relies primarily on *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 630 N.E.2d 1054 (1994), in which the plaintiff also initiated supplementary proceedings in order to collect a money judgment. The judge presiding over the supplementary proceedings pierced the corporate veil and entered judgment against the corporation's two shareholders and directors. *Pyshos*, 258 Ill. App. 3d at 619-20.

█ █ The appellate court determined this was improper because the only relevant inquiries in supplementary proceedings are (1) whether a judgment debtor possesses assets that may be applied to satisfy the judgment, or (2) whether a third party is holding assets of the judgment debtor that may be applied to satisfy the judgment. *Pyshos*, 258 Ill. App. 3d at 623. "On the other hand, an action to pierce the corporate veil does not require any allegations that assets of the judgment debtor corporation are in the hands of the third-party shareholders or directors" and is actually a much broader inquiry. *Pyshos*, 258 Ill. App. 3d at 623. A corporate veil will be pierced where (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual are nonexistent, and (2) the circumstances are such that adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences. *Gallagher v. Reconco Builders, Inc.*, 91 Ill. App. 3d 999, 1004, 415 N.E.2d 560, 563-64 (1980). To determine whether a unity of interests exists to the extent that the corporate veil should be pierced, courts will look to a number of factors, including whether there is inadequate capitalization, failure to observe corporate formalities, insolvency of the debtor corporation, and absence of corporate records. *Gallagher*, 91 Ill. App. 3d at 1005.

█ Accordingly, the judgment creditor could use supplementary proceedings to discover whether the judgment debtor corporation's individual shareholders and directors held assets of the corporation, or the judgment creditor could choose to file a new action to pierce the corporate veil in order to hold the individual shareholders and directors personally liable for the judgment of the corporation. *Pyshos*, 258 Ill. App. 3d at 624.

The court explained that a new action is proper because a judgment is a "new and distinct obligation of the corporation which differs in nature and essence from the original claim." *Pyshos*, 258 Ill. App. 3d at 624. This principle was recently reiterated in *Peetoom*, 334 Ill. App. 3d at 525, where the defendant argued that an action to collect a

negligence judgment was subject to the two-year statute of limitations governing personal injury actions. The court rejected this argument, indicating that the plaintiff's negligence judgment became a new and distinct obligation of the defendant corporation, and that a new action to pierce the defendant's corporate veil to enforce the judgment was subject to the five-year statute of limitations contained in the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 1998)). *Peetoom*, 334 Ill. App. 3d at 527. *Peetoom* relied in part on *Pyshos*, 258 Ill. App. 3d 618, 630 N.E.2d 1054, as well as additional cases now cited by the trust, including *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill. App. 3d 1084, 664 N.E.2d 328 (1996) (court reviewed merits of new action to pierce corporate veil to collect workers' compensation judgment from corporation's shareholders), and *Lange v. Misch*, 232 Ill. App. 3d 1077, 598 N.E.2d 412 (1992) (judgment creditor should have filed, and on remand could still file, separate action to pierce corporate veil).

Based on this line of cases, we agree with the trust's assertion that a judgment creditor may choose to file a new action to pierce the corporate veil of a judgment debtor in order to hold individual shareholders and directors liable for a judgment against the corporation.

■ We also rely on *Pyshos* and *Lange* to reject the defendants' assertion that the trust's improper attempt to pierce the corporate veil in the 1996 supplementary proceedings precludes the new action. Defendants argue that the trust "cannot now turn around and claim that because [it] misconstrued the law in the earlier case, the earlier case should have no preclusive effect here." The *Pyshos* and *Lange* plaintiffs not only attempted to, but actually did, pierce the corporate veil in their respective supplementary proceedings. Nevertheless, both courts indicated that nothing in the Code of Civil Procedure authorizes the entry of judgment at a supplementary proceeding against a third party who does not possess assets of the judgment debtor. *Pyshos*, 258 Ill. App. 3d at 623; *Lange*, 232 Ill. App. 3d at 1081. In other words, a supplementary proceedings judge lacks authority to adjudicate the merits of corporate veil allegations, and, therefore, the first element of *res judicata*, "a final judgment on the merits rendered by a court of competent jurisdiction" (*Marvel of Illinois*, 318 Ill. App. 3d at 863), cannot be triggered by those proceedings.

■ We also reject defendants' suggestion that the trust should have amended its 1996 complaint once it learned through the supplementary proceedings that Karen Lynn was unable to pay the judgment. We point out that if the trust had vacated the $22,162 judgment in order to amend the complaint with corporate veil allega-

tions—a judgment it obtained at minimal expense by default—the trust would have had to relitigate the breach of lease claim at additional expense and possibly with an adverse result. Defendants cite *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 742 N.E.2d 351 (2000), which is distinguishable. There, the plaintiff was aware of additional conduct within four days of filing its first action, but failed to amend its pleadings before the complaint was dismissed two months later by the trial judge. *Altair*, 318 Ill. App. 3d at 63. The court determined that *res judicata* precluded a new suit that focused on the additional conduct (*Altair*, 318 Ill. App. 3d at 62), and it declined to apply an exception to *res judicata*, indicating that Altair's failure to amend when it had the opportunity weighed in favor of its decision. *Altair*, 318 Ill. App. 3d at 63. *Altair* does not stand for the proposition that a successful plaintiff should vacate an enforceable judgment in order to add a new, additional cause of action.

The trust's second contention is that under the common law, there is no present obligation to pay future rent, and therefore, the trust properly limited its 1996 claim to rent due at the time of trial. The rider to the lease specified that monthly rent was to be paid in advance on the first of each month and obligated Karen Lynn to pay a portion of the property's annual real estate taxes. The trust relies primarily on an unpublished federal district court opinion and on *Johnstowne Centre Partnership v. Chin*, 110 Ill. App. 3d 595, 599, 442 N.E.2d 680 (1982), *reversed on other grounds*, 99 Ill. 2d 284, 458 N.E.2d 480 (1983).

The trust also argues that the trial judge misconstrued paragraph 14 of the lease, which indicates the lessor was under no duty to mitigate its damages from lost rent by accepting a new tenant and that the lessee would satisfy any deficiency. The trial judge indicated that because the lessor was under no duty to mitigate after the lessee abandoned the premises in 1996, the due dates of the remaining rent were accelerated so that the entire amount under the lease was due immediately. The trial judge concluded the trust could have used its 1996 action to obtain the entire amount of rent contemplated by the lease and that its failure to do so operated as *res judicata*. We disagree.

■ Recovery for breach of lease is limited to the amount due at the time of trial. *Johnstowne Centre*, 110 Ill. App. 3d at 599, citing *People ex rel. Nelson v. West Town State Bank*, 373 Ill. 106, 25 N.E.2d 509 (1940); *Dorris v. Center*, 284 Ill. App. 344, 1 N.E.2d 794 (1936).

Further, the payment of future rent is not a present obligation. *Johnstowne Centre*, 110 Ill. App. 3d at 599, citing *Nelson*, 373 Ill. 106, 25 N.E.2d 509; *Dorris*, 284 Ill. App. 344, 1 N.E.2d 794. There is no obligation to pay rent until rent day. *Nelson*, 373 Ill. at 111. The failure

to pay rent when it accrues does not accelerate the unpaid rent in the absence of a provision in the lease to that effect. *Nelson*, 373 Ill. at 111.

Additionally, a lessor has the options of suing for rent installments as they come due, suing for several accrued installments, or suing for the entire amount at the end of the lease term. *Dorris*, 284 Ill. App. at 349; *Marshall v. John Grosse Clothing Co.*, 184 Ill. 421, 56 N.E. 807 (1900) (suits may be maintained on each provision of a contract as the payments mature by the terms of the contract); *McDole v. McDole*, 106 Ill. 452 (1883) (separate actions may be brought for each year's annual rent payment, and judgment for one year's rent is no bar to second action for subsequent year's rent).

■ The case cited by defendants, *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 589 N.E.2d 1074 (1992), indicates it is not against public policy to enforce an agreement obligating a tenant to continue paying rent after vacating the leased premises. It does not stand for the proposition that future rent became a present obligation when the trust filed its breach of lease claim in 1996. Compare *Leahy Realty Corp. v. American Snack Foods Corp.*, 253 Ill. App. 3d 233, 625 N.E.2d 956 (1993) (lease provided that tenant would pay liquidated damages upon termination of lease, consisting of all rent due on the date of termination and an amount equal to rent for the residue of the lease term).

■ We read this line of cases to mean that a new set of operative facts arose each month when rent went unpaid on the first day of the month. In other words, there is no "identity of cause of action" between the 1996 action and the portion of the new action which seeks subsequently accruing rent.

■ Additionally, the rights of parties to a contract are limited by the terms of their contract. *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 925, 554 N.E.2d 511 (1990). A court must not rewrite a contract to suit one of the parties and must enforce the contract as written. *Wright*, 196 Ill. App. 3d at 925. "There is a strong presumption against provisions that easily could have been included in the contract but were not." *Wright*, 196 Ill. App. 3d at 925. Accordingly, when a contract is clear and unambiguous, a court will not add terms in order to reach a more equitable agreement. *Wright*, 196 Ill. App. 3d at 925.

■ Here, the terms of paragraph 14 of the lease indicate that the lessee's obligation to pay monthly rent would survive its premature relinquishment of the premises and that the lessor was under no duty to mitigate for the lost rent by accepting a substitute tenant. Paragraph 14 did not indicate that the monthly due date was affected

in any way by the lessee's premature relinquishment, and the trial judge erred by adding a payment acceleration provision to the parties' contract.

In light of the above facts and case law, we conclude that when the first suit was filed on September 3, 1996, it would have been premature to seek rent for 1997 and 1998, and that the trust had the option of suing for rent in a series of suits, even monthly, as it came due during those subsequent years.

Defendants have persistently contended that the corporate veil portion of the new action is nothing more than a breach of lease claim. However, it is apparent that the 1996 action was based on the fact that Karen Lynn breached the lease in 1996, while the new action is based on the facts that Karen Lynn subsequently breached the lease in 1997 and 1998 and that Fashion Enterprises should be held accountable for Karen Lynn's debt under the corporate veil theory. Because the two suits involve different operative facts, there is no "identity of cause of action" between them and, therefore, no *res judicata* effect. See *Marvel of Illinois*, 318 Ill. App. 3d at 863 (describing the three essential elements of *res judicata*).

There is, however, one slight exception to this conclusion. We point out that the lease indicates monthly rent is due on the first of the month, and that rent for October 1996 and November 1996 came due while the suit was pending between September 3, 1996, and the entry of default judgment on November 21, 1996. The trust could have but did not amend its breach of contract claim to include the additional amount of rent that came due while the 1996 suit was pending. See *Johnstowne Centre*, 110 Ill. App. 3d at 599 (recovery for breach of lease is limited to amount of rent due at time of trial). Because the trust could have included rent for October 1996 and November 1996 in the default judgment, *res judicata* now bars the trust from seeking rent for October 1996 and November 1996 in any subsequent suit. See *Marvel of Illinois*, 318 Ill. App. 3d at 863 (prior action is conclusive as to all issues that were or properly might have been raised).

█ The trust's third contention is that paragraph 2 of the rider only relieves the parent company of liability arising from its own use of the leased premises, and therefore, the trial judge erred in determining that the language insulated Fashion Enterprises from liability for fraud or the judgment debt of Karen Lynn under the corporate veil theory. Fashion Enterprises contends the trial judge correctly determined the lease precludes any liability whatsoever.

The paragraph at issue, entitled "Assignment," contemplates that Karen Lynn could assign its rights under the lease to Fashion Enterprises and yet remain liable for the covenants and conditions of

the lease. The other covenants and conditions of the lease include paying the utilities, maintaining plate glass insurance, not permitting any immoral practices at the premises, and indemnifying the lessor for any claims arising from the lessee's negligent conduct in the leased premises. None of the various provisions requires Karen Lynn to abstain from fraud or any of the other conduct contained in the trust's corporate veil counts. The final provision of the paragraph indicates Fashion Enterprises "shall not be liable under any provisions of this Lease, regardless of the activity of such parent."

The context alone demonstrates that the provision is limited to Fashion Enterprises' own use of the premises. The new lawsuit, however, is not based on Fashion Enterprises' own use of the premises. Additionally, nothing in the various provisions of the contract could insulate the Needelmans from this lawsuit, because neither individual was mentioned in the contract or made a party to it. The agreement that Fashion Enterprise "shall not be liable under any provisions of this Lease," has no application to this lawsuit.

■ Fashion Enterprises and the Needelmans also argue the corporate veil allegations are factually insufficient. This argument was never raised in the trial court and cannot be argued for the first time on appeal. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 775 N.E.2d 998 (2002). The contention, therefore, is waived. *Robidoux*, 201 Ill. 2d 324, 775 N.E.2d 998.

Next, the trust argues its fraud count was factually sufficient and should not have been dismissed pursuant to defendants' section 2—615 motion (735 ILCS 5/2—615 (West 1998)).

■ A section 2—615 motion raises the threshold question of whether a cause of action has been stated. *Greene v. First National Bank of Chicago*, 162 Ill. App. 3d 914, 925, 516 N.E.2d 311 (1987). In ruling on a section 2—615 motion, a court must accept all well-pled facts as true (*Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1081, 702 N.E.2d 265 (1998)) and disregard mere conclusions of law or fact that are unsupported by the facts alleged (*Capital Indemnity Corp. v. Stewart Smith Intermediaries, Inc.*, 229 Ill. App. 3d 119, 593 N.E.2d 872 (1992)). This court reviews the dismissal of a claim under section 2—615 *de novo* and must determine whether the allegations, interpreted in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Hirsch*, 299 Ill. App. 3d at 1081.

■ Fraud may be perpetrated by fraudulent misrepresentation or by fraudulent concealment. See *Hirsch*, 299 Ill. App. 3d at 1085-86. A high standard of specificity is imposed on pleadings asserting fraud. *Hirsch*, 299 Ill. App. 3d at 1085. The facts constituting the alleged

fraud must be stated "with sufficient specificity, particularity and certainty to apprise the opposing party of what he is called upon to answer." *Hirsch*, 299 Ill. App. 3d at 1085. The pleading "must contain specific allegations of facts from which fraud is the necessary or probable inference, including what representations were made, when they were made, who made the misrepresentations and to whom they were made." *Hirsch*, 299 Ill. App. 3d at 1085.

 To state a cause of action for fraudulent misrepresentation, a plaintiff must allege that the defendant made a representation of material fact, the defendant knew or believed the representation was untrue, the plaintiff had a right to and did rely on the representation, the representation was made for the purpose of inducing the plaintiff to act or refrain from acting, and the representation led to the plaintiff's injury. *Wright*, 196 Ill. App. 3d 920, 554 N.E.2d 511.

 The fraud count does not meet this standard. It indicates that Sheldon and Gary Needelman defrauded the trust when:

> "Needleman [*sic*] made a material omission and false statements of fact in the negotiations and dealings with Miner[, the trust's agent,] which led to the execution of the lease. Miner reasonably relied upon the omissions and false representations of fact and in reliance thereon executed a lease to Karen Lynn and failed to take earlier action to terminate the lease."

After execution of the lease:

> "Miner was led to believe and did in fact believe that Karen Lynn was a *bona fide* corporation. Miner believed that Karen Lynn was doing business in the premises. The receipt of rent checks from plaintiff [*sic*] fostered that belief. Needleman [*sic*] never advised Miner that Karen Lynn was only a sham corporation. Needleman [*sic*] led Miner to believe that Karen Lynn was transacting business in the leased premises which was a falsehood."

The allegation concerning false statements of fact in the lease negotiations does not specify which of the two Needelmans made the statements, what the statements were, that the speaker knew or believed the statement was untrue, that the trust had a right to rely on and did rely on those statements, or that the statements were made in order to induce the trust to act or refrain from acting.

The allegation that "Needleman [*sic*]" subsequently led Miner to believe Karen Lynn was transacting business at the leased premises suffers from many of the same defects. Additionally, the statement that Miner's belief was fostered by the receipt of rent checks *from herself* is clearly erroneous and did not add any specificity to the pleading.

The fraud count fails to state a cause of action for fraud by misrepresentation.

The fraud count also fails to state a cause of action for fraud by concealment of a material fact. In order to state a cause of action for fraud by concealment of a material fact, a plaintiff must plead that the defendant concealed a material fact with an intent to deceive when it was under a duty to disclose that fact to the plaintiff. *Wright*, 196 Ill. App. 3d at 926. Mere silence does not amount to fraud. *Hirsch*, 299 Ill. App. 3d at 1086. However, silence accompanied by deceptive conduct or suppression of a material fact can give rise to concealment, and the party that has concealed information is then under a duty to speak. *Hirsch*, 299 Ill. App. 3d at 1086.

The fraud count indicates "Needleman [*sic*] made a material omission" in the lease negotiations, and subsequently "Needleman [*sic*] never advised Miner that Karen Lynn was only a sham corporation." The most glaring defect in these allegations is that it is unclear to which of the two Needelmans the trust is referring. Additionally, the "material omission" is not specified, there is no assertion that the concealment was done with an intent to deceive, and there is no indication that the Needelmans had or breached a duty to disclose concealed facts. The fraud count fails to state a cause of action for fraud by concealment of a material fact.

Accordingly, we affirm the dismissal of the fraud count pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)).

In summary, we have concluded that *res judicata* did not bar the trust's new action to pierce the corporate veil in order to enforce the 1996 judgment and to obtain additional rent accruing after the 1996 action. We have also determined that paragraph 14 of the lease did not accelerate the rent due under the lease, and that paragraph 2 of the rider does not apply to the particular theories asserted in this new action. However, we have determined the allegations of fraud were deficient. Accordingly, we reverse and remand counts I, II, III, and IV of the second amended complaint for further proceedings consistent with this order; and we affirm the dismissal of count V with prejudice.

The only remaining issue is the cross-appeal, in which Fashion Enterprises and the Needelmans argue Judge Hynes abused his discretion in denying their petition for sanctions.

■ Defendants contend their petition demonstrated the trust filed knowingly false pleadings and baseless motions. Defendants made numerous arguments in their petition, but present only two arguments in their brief. The failure to argue the additional points in the brief results in their waiver under Supreme Court Rule 341(e)(7). 155 Ill. 2d R. 341(e)(7); *Schnidt v. Henehan*, 140 Ill. App. 3d 798, 805, 489 N.E.2d 415 (1986).

In the brief, defendants contend that the trust received Karen Lynn's corporate minutes, annual reports, and bank statements during Gary Needelman's citation examination, yet "persist[ently] *** alleged that Karen Lynn did not follow corporate formalities, did not have minutes or a minute book, and did not file annual reports."

Defendants further contend that the trust's motion to clarify Judge Houser's order dismissing the original complaint was improper, because the filing of the first amended complaint rendered the original complaint moot and any related rulings irrelevant to the ongoing proceedings.

Supreme Court Rule 137 states:

> "The signature of an attorney *** constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court *** may impose *** an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." 155 Ill. 2d R. 137.

Courts should construe Rule 137 narrowly and apply it only in cases falling strictly within its terms. *Edward Yavitz Eye Center, Ltd. v. Allen*, 241 Ill. App. 3d 562, 569, 608 N.E.2d 1235 (1993).

A party seeking to recover under Rule 137 has the burden of showing that his opponent violated the rule, which "requires more than merely demonstrating that the nonmoving party ultimately lost on the merits." *Edward Yavitz Eye Center*, 241 Ill. App. 3d at 569. The movant must demonstrate that the nonmovant pled statements which he knew, or should have known, to be untrue. *Heritage Pullman Bank & Trust Co. v. Carr*, 283 Ill. App. 3d 472, 479, 670 N.E.2d 814 (1996). "A party making a filing in the trial court must make prefiling inquiries that are reasonable under the circumstances existing at the time the pleading is signed." *Edward Yavitz Eye Center*, 241 Ill. App. 3d at 569.

The decision whether to impose Rule 137 sanctions is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *In re Estate of Smith*, 201 Ill. App. 3d 1005, 1009, 559 N.E.2d 571 (1990). The decision of the trial judge must

clearly set forth the factual basis for the ruling in order to be accorded deference. *Estate of Smith*, 201 Ill. App. 3d at 1009. A reviewing court "should primarily be determining whether (1) the [trial judge's] decision was an informed one, (2) the decision was based on valid reasons that fit the case, and (3) the decision followed logically from the application of the reasons stated to the particular circumstances of the case." *Estate of Smith*, 201 Ill. App. 3d at 1009-10.

█ Judge Hynes declined to sanction the trust for its allegations about the corporate formalities, stating:

"[B]ecause the movant here has the burden of proving that these allegations are false, I don't have anything in the record by way of affidavit that says, listen, not only was there a corporate minute book but yes we met *** on a regular basis. We did comply with these corporate formalities. The deposition of Mr. Needelman danced around that issue, but I don't think that those specific—those issues were specifically addressed here.

Consequently, the Court cannot say that the statements contained in plaintiff's complaint were untrue or that the statements were made without reasonable cause to believe they were true."

We find no abuse of discretion in Judge Hynes's denial of sanctions for the corporate formalities allegations. We were unable to find any allegation that Karen Lynn failed to issue annual reports. Additionally, the allegation that "There were no meetings of the shareholders or directors of Karen Lynn and no corporate minutes have been maintained," appears reasonably based upon Gary Needelman's statement that the minute book did not contain any signed corporate resolutions. There is nothing in the record on appeal that the trust pled statements which it knew or should have known were false. A party seeking to recover under Rule 137 has the burden of showing that his opponent violated the rule. *Edward Yavitz Eye Center*, 241 Ill. App. 3d at 569.

Judge Hynes indicated that, with regard to the motion for clarification, the defendants failed to take into account that Judge Hynes was relying on another judge's order when he addressed the *res judicata* arguments, that the other judge's order was "clear" but "somewhat bare bones," and that no transcript was available. He also stated that he believed counsel was attempting to correct the record or obtain a ruling from the other judge that would "aid the Court" in its interpretation of the bare bones order, and that he did not find that the motion was in any way vexatious or designed to delay the disposition of the case.

We find no abuse of discretion in this determination. The record indicates there was some dispute or confusion about the significance

of Judge Houser's order dismissing the original complaint "as to breach of lease on *res judicata,*" which Judge Hynes was subsequently relying upon when he considered the first amended complaint. Judge Hynes apparently found some merit in the motion for clarification of Judge Houser's order, because he transferred it to Judge Houser for a hearing, and then delayed ruling on the motion for reconsideration until after the motion for clarification could be decided. The trial judge is in the best position to decide how Rule 137 should be applied to the cases before it. *Estate of Smith,* 201 Ill. App. 3d at 1009.

Accordingly, we affirm the trial judge's rulings as to the petition for sanctions.

Reversed and remanded in part; affirmed in part.

CAHILL and GARCIA, JJ., concur.