BASIL N. PYSHOS, Plaintiff-Appellee, v. HEART-LAND DEVELOPMENT COMPANY, Defendant (Harvey X. Koloms *et al.*, Supplementary Defendants-Appellants).

First District (4th Division)   No. 1—92—3237

Opinion filed February 17, 1994.—Rehearing denied March 18, 1994.

Robert S. Minetz, of Cowan & Minetz, Chartered, of Chicago, for appellants.

Paul W. McVicker, of Pyshos & McVicker, Ltd., of Arlington Heights, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Basil Pyshos originally filed this action against Heart-Land Development Company (Heart-Land) in 1982 to recover an earnest money deposit. On June 9, 1987, the parties agreed to the entry of a judgment against Heart-Land in the amount of $20,000 plus costs. The plaintiff then initiated supplementary proceedings and subsequently filed a petition for turnover and to pierce the corporate veil. After a hearing, the trial judge granted the plaintiff's motion for summary judgment and pierced the corporate veil, entering a

judgment against supplementary defendants Koloms and McLinden, the shareholders and directors of Heart-Land. The defendants appeal from the lower court's decision to grant the plaintiff's motion for summary judgment. We conclude that the allegations which must be raised to support a petition to pierce the corporate veil do not fall within the limited scope of the inquiry in supplementary proceedings. For that reason, we now reverse the decision of the trial court to grant summary judgment on the issue of piercing the corporate veil and remand this case for further proceedings consistent with this opinion.

## FACTS

A review of the record in this case reveals that Heart-Land was an Illinois corporation whose purpose was to acquire real estate and build small apartment buildings which would be sold to the public. At the time at which it stopped doing business, the sole shareholders and directors of Heart-Land were Harvey Koloms and William McLinden. From an affidavit made part of the record, it appears that Heart-Land had acquired two parcels of land and intended to construct 32 apartment buildings on this land. It was asserted that the first eight apartment buildings sold quickly; however, after these sales, interest rates began to rise and Heart-Land had difficulty securing additional buyers.

The plaintiff, Basil Pyshos, was one of the individuals who entered into purchase agreements with Heart-Land. When he could not obtain financing in accordance with the terms of the agreements, he attempted to void the contracts and to secure a return of the $20,000 which he had deposited as earnest money. Apparently, Heart-Land never returned the money to the plaintiff.

The plaintiff commenced these proceedings in 1982 by filing a two-count complaint. That complaint named numerous parties as defendants, including Heart-Land, Koloms and McLinden. In count I of the complaint, it was alleged that Pyshos had entered into the "Richton Trail Purchase Agreement" with Heart-Land for the purchase of lot 11 in Richton Trail Apartments. In count II of the complaint, it was alleged that Pyshos had entered into a purchase agreement with Heart-Land for the purchase of lot 24 in Richton Trail Apartments. (The complaint asserted that, by agreement of the parties, this was subsequently changed to the purchase of lot 12.)

The complaint further alleged that Pyshos had given to Heart-Land a $10,000 cashier's check to be used as an earnest money deposit for the purchase of lot 11. To secure the purchase of lot 24 (later changed to lot 12), Pyshos had given to Heart-Land a total of $10,000 which was, again, to be used as an earnest money deposit.

The purchase agreements, both of which were attached to the complaint, were dated May 14, 1978. Each of the purchase agreements indicated that enforcement of the contracts was contingent upon the plaintiff securing financing with the following terms: Within 30 days, the plaintiff was to secure a firm commitment for a mortgage in the amount of $140,400 with interest not to exceed $9^{1}/2\%$ for a term of 29 years, or any other terms which the plaintiff accepted. If the plaintiff could not secure financing within that 30-day period and so notified the seller of the property, Heart-Land, the purchase agreement provided that the contract would become void and the earnest money would be returned to the plaintiff. The purchase agreement also provided that the seller, upon receiving such notice, had an additional 30 days within which it could attempt to secure the financing on behalf of the plaintiff and the contract would then remain in effect.

The complaint asserted that the plaintiff had not been able to secure such a loan and that the plaintiff had informed Heart-Land of this several times. It was further alleged that the plaintiff had asked Koloms, McLinden and Heart-Land to secure the necessary financing themselves. On several occasions, the complaint alleged, the plaintiff had elected to declare the purchase agreement void because of the inability of any of the parties to secure the necessary financing and had demanded the return of his earnest money deposits. The complaint sought actual and punitive damages.

The plaintiff then sought leave to file an amended complaint and subsequently filed an amended complaint which named Koloms, McLinden and Heart-Land, as well as other parties, as defendants and alleged much of the same factual background as the original complaint. The amended complaint was stricken and dismissed. The plaintiff then filed a second-amended complaint. As to Koloms, McLinden and Heart-Land, this complaint was also stricken and dismissed.

The plaintiff then filed a third-amended complaint. The trial court dismissed all of the defendants named in the complaint except Heart-Land and entered an order that the plaintiff had leave to file an amended complaint for breach of contract against this defendant.

The plaintiff filed the complaint against Heart-Land and, on June 9, 1987, the court entered an order indicating that Heart-Land had agreed to the entry of a judgment against it in the sum of $20,000 and statutory costs.

The plaintiff then initiated supplementary proceedings to discover the assets of Heart-Land and consequently deposed both Koloms and McLinden in September of 1987. During these citation proceedings, it

was revealed that the initial investment of the shareholders in the corporation was $25,000. Koloms stated that approximately $2 million to $2$^1$/2 million in loans were made to Heart-Land before it stopped doing business in 1980. Although at the hearing there was some confusion as to whether the loans to Heart-Land were made by the shareholders or by financial institutions, in a later affidavit Koloms stated that all the loans had been made by financial institutions and had been guaranteed by Koloms and McLinden. During his citation proceeding, McLinden stated that he had made loans to the corporation. He also acknowledged that he and Koloms had guaranteed certain loans and, when he repaid those loans, he often wrote checks directly to the lending institution.

Koloms stated that at the time that Heart-Land stopped doing business, Heart-Land's accounts reflected that the shareholders were owed approximately $17,000. It was also established that any notes signed by the corporation to secure any loans had probably been destroyed. McLinden stated, however, that he did not remember receiving any notes to secure loans which he had made the corporation. Koloms did not produce a corporate minute book; he testified that, although a corporate minute book had existed at one time, it was possible that it had since been destroyed. Koloms also stated that the officers did not have formal meetings, but, whenever there was a change of ownership, a corporate record was made.

On December 29, 1988, the plaintiff filed a petition for turnover, appointment of a receiver, action to pierce the corporate veil and other relief. The supplementary defendants filed a motion to dismiss this petition. On May 17, 1989, the judge handling the supplementary proceedings denied the motion to dismiss the petition. The record indicates that on January 30, 1992, the plaintiff appeared before the judge and presented a motion for summary judgment. On June 18, 1992, the judge entered an order granting the plaintiff's motion for summary judgment. The defendants appeal from this decision.

We now reverse and remand this case for further proceedings consistent with this opinion. We conclude that it is improper to pierce the corporate veil in supplementary proceedings because the allegations which must be raised to support an action to pierce the corporate veil do not fall within the limited scope of what may be heard in supplementary proceedings.

## DISCUSSION

■ Supplementary proceedings may only be initiated after a judgment has been entered. Governed by section 2—1402 of the Illinois Code of Civil Procedure, they are designed to assist a

judgment creditor to discover assets of the judgment debtor in order to satisfy that judgment. Ill. Rev. Stat. 1987, ch. 110, par. 2—1402; *Elmhurst Auto Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.* (1992), 235 Ill. App. 3d 88, 93, 600 N.E.2d 1229, 1232.

Section 2—1402 allows a judgment creditor to conduct an examination of a judgment debtor or any third party who might hold the assets of the judgment debtor. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1402(a); *O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, 1067, 493 N.E.2d 1175, 1179.) In order to proceed against a party who is not the judgment debtor in a supplementary proceeding, however, the record must contain some evidence showing that the third party possessed assets of the judgment debtor. (*Lange v. Misch* (1992), 232 Ill. App. 3d 1077, 1081, 598 N.E.2d 412, 415.) Once the judgment creditor discovers assets in the hands of a third party, the judge may order a third party to deliver up those assets to satisfy that judgment. Ill. Rev. Stat. 1987, ch. 110, pars. 2—1402(b)(3), (b)(4), (b)(5); *O'Connell*, 143 Ill. App. 3d at 1067, 493 N.E.2d at 1179.

However, "nothing in the Code authorizes the entry of a judgment at a supplementary proceeding against a third party who does not possess assets of the judgment debtor." (*Lange*, 232 Ill. App. 3d at 1081, 598 N.E.2d at 415.) Therefore, the only relevant inquiries in supplementary proceedings are (1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment.

■ On the other hand, an action to pierce the corporate veil does not require any allegations that assets of the judgment debtor corporation are in the hands of the third-party shareholders or directors. The inquiry on a petition to pierce the corporate veil is much broader. "For the corporate veil to be pierced: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that an adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences." (*McCracken v. Olson Cos.* (1986), 149 Ill. App. 3d 104, 109, 500 N.E.2d 487, 491; see also *Gallagher v. Reconco Builders, Inc.* (1980), 91 Ill. App. 3d 999, 1004, 415 N.E.2d 560, 563-64.) To determine whether a unity of interests between the entities exists such that the court might properly consider piercing the corporate veil, the courts have looked to a number of factors, including whether there is inadequate capitalization, a failure to observe corporate formalities, an absence of corporate records, and nonpayment of dividends. (*Gallagher*, 91 Ill. App. 3d at 1005, 415 N.E.2d at 564.) Allegations

concerning these elements must appear in a complaint to pierce the corporate veil.

■ Quite simply, what must be alleged to pierce the corporate veil does not fall within the scope of what may be heard in supplementary proceedings. This means that a party who has secured a judgment against a corporation may not seek to pierce the corporate veil in supplementary proceedings. However, a judgment creditor who has managed to secure a judgment against a corporation and seeks to hold the individual shareholders and directors of a judgment debtor corporation liable for that judgment may consider alternative remedies.

First, a judgment creditor may choose to initiate a supplementary proceeding against the third-party shareholders and directors. The inquiry in such supplementary proceedings, however, is limited to considering the allegation that the shareholders and directors are holding assets of the judgment debtor corporation.

Alternatively, a judgment creditor may choose to file a new action to pierce the corporate veil to hold individual shareholders and directors liable for the judgment of the corporation. A new proceeding is proper because, where a party obtains a judgment against another party, the underlying claim merges with the judgment and the judgment becomes a new and distinct obligation of the corporation which differs in nature and essence from the original claim. *In re Jenkins* (N.D. Ill. 1981), 14 Bankr. 748, 750 (discussing Illinois law on mortgages); *Burket v. Reliance Bank & Trust Co.* (1940), 306 Ill. App. 563, 567, 29 N.E.2d 297, 299.

This is the same result reached by the court in *Lange v. Misch* (1992), 232 Ill. App. 3d 1077, 598 N.E.2d 412. In that case, the court concluded that it was improper to pierce the corporate veil in supplementary proceedings; instead, the court held that the proper procedure would have been to file a separate petition to pierce the corporate veil, with appropriate notice of the claim and remedy sought and an appropriate pleading on which separate proceedings could be had. *Lange*, 232 Ill. App. 3d at 1081, 598 N.E.2d at 415.

■ Applying this discussion to the facts presented in this case, then, Pyshos received a judgment against Heart-Land and subsequently initiated a supplementary proceeding in order to discover assets of this judgment debtor. During the citation proceedings which ensued, Pyshos discovered facts which led him to file a petition for turnover and to pierce the corporate veil.

That petition contained allegations that Heart-Land and the shareholders, Koloms and McLinden, had ignored corporate formalities. The judge handling the supplementary proceedings elected to

rely upon such allegations and pierce the corporate veil. As we have previously noted, this was improper.

However, the petition for turnover and to pierce the corporate veil also contained allegations that Koloms and McLinden "converted corporate assets into personal assets." An inquiry into whether a third party holds assets of the judgment debtor is proper in supplementary proceedings. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1402.) For this reason, we remand this case for further consideration of the supplementary proceedings, limiting the inquiry to whether Koloms and McLinden possess assets of Heart-Land.

## CONCLUSION

In summary, we conclude that it is improper to pierce the corporate veil in supplementary proceedings. Generally, when a judgment creditor has received a judgment against a corporation and looks to the shareholders and directors of the corporation to satisfy that judgment, a judgment creditor may pursue two different avenues of recovery:

(1) A judgment creditor may pursue supplementary proceedings, alleging that the third-party shareholders and directors are in possession of assets of the judgment debtor corporation.

(2) A judgment creditor may file a new complaint to pierce the corporate veil, providing appropriate notice of the claim and remedy sought and an appropriate pleading.

In light of our holding on this issue, we decline to address the arguments raised by appellants here. For the above reasons, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and HOFFMAN, JJ., concur.