2026 IL App (1st) 250546

FIFTH DIVISION
June 26, 2026

No. 1-25-0546

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| GF JUDGMENTS LLC, as Assignee of Sterling National Bank, | ) ) ) ) | |
|  | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) ) | Cook County |
| ESTATE OF EVGENY FREIDMAN, | ) ) | No. 2023 L 050646 |
| Defendant | ) ) ) | The Honorable James E. Hanlon Jr., Judge, presiding. |
|  | ) ) | |
| (Azurite LLC; 4532 N. Elston, LLC; and 4514 Elston, LLC, | ) ) ) | |
| Third-Party Citation Respondents-Appellants). | | |

_____

JUSTICE WILSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1                                    I. BACKGROUND

¶ 2     On January 31, 2017, a New York state court entered a judgment against Evgeny Freidman in favor of Sterling National Bank (Sterling) for more than two million dollars. Sterling subsequently assigned its interest in the judgment to GF Judgments, LLC (GFJ). On December 6,

2023, the judgment was domesticated in the circuit court of Cook County in the amount of $3,617,485.17 plus additional costs, fees and interest against defendant Estate of Evgeny Freidman (Estate).

¶ 3     After the judgment was domesticated, GFJ issued citations to discover assets to the administrator of Freidman's Estate (because Freidman had passed away in 2021) and to three limited liability corporations: Azurite, LLC; 4532 N. Elston, LLC; and 4514 Elston, LLC (LLCs). In the citations issued to the LLCs, GFJ sought documents and information related to the possibility that the LLCs held assets that could be used to satisfy (or partially satisfy) the judgment entered against Freidman in favor of Sterling.

¶ 4     After the circuit court ordered the LLCs to produce all documents responsive to the citations, the amended and restated operating agreements provided by the LLCs indicated that their membership interests were owned by a combination of trusts, including the Evelyn Funding Trust, the Lindy Funding Trust, and the Bridge Funding Trust. The documents show that (1) the Lindy and Bridge Funding Trusts each possess a 50% membership interest in Azurite, LLC, (2) the Evelyn and Bridge Funding Trusts each possess a 50% membership interest in 4514 Elson, LLC, and (3) the Bridge and Lindy Funding Trusts each possess a 50% membership interest in 4532 N. Elston LLC.

¶ 5     After receiving these documents, GFJ filed for a charging order against the distributional interests of the Evelyn and Lindy Funding Trusts (Trusts) in the LLCs to partially satisfy its judgment against Freidman. GFJ noted that, in *In re Hypnotic Taxi, LLC*, No. 15-43300, 2017 WL 4464876 (Bankr. E.D.N.Y. Oct. 4, 2017), the United States Bankruptcy Court for the Eastern District of New York had already determined that four trusts, including the Evelyn Funding Trust and the Lindy Funding Trust, were Freidman's alter egos; that the trusts' veils could be pierced;

and that an order of attachment could properly reach any assets Freidman had fraudulently transferred to the trusts. GFJ argued that because a New York court had already determined that the Evelyn Funding Trust and the Lindy Funding Trust are Freidman's alter-egos, the Trusts' distributional interests in the LLCs are subject to attachment.

¶ 6    The LLCs argued in response that the New York bankruptcy court's decision does not apply, that it would be unfair to apply collateral estoppel, and that supplementary proceedings do not permit veil piercing.

¶ 7    In its memorandum opinion and order, the circuit court noted that the question before it was "whether GF[J] can use collateral estoppel to use the alter-ego determination made by the [New York] court to establish that the membership interests the Trusts own in the LLCs are assets that belong to the judgment debtor" which, "in turn, would entitle GF[J] to a charging order against the Trusts' distributional interests in the LLC." The court noted that Illinois courts have allowed for the offensive use of collateral estoppel in cases where a plaintiff seeks to "foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in another action." It found that because the New York court determined that the Trusts are alter egos of Freidman "after a contested evidentiary hearing in which Freidman and the Trusts participated" and the issue was "fully litigated" and "included a final judgment," a charging order could attach to the trusts' membership interests in the LLCs "because they hold property that belongs to Freidman." The court addressed the LLCs' argument— that they were the rightful owners of the Lindy and Evelyn Funding Trusts' membership interests in the LLCs because Freidman's membership interests reverted to them upon Freidman's death—but found the claim was not properly before it. The court stated, "until and unless the LLCs win a judgment that they are the rightful owners of the membership interests, GF[J] is entitled to a charging order." It found that there was "no unfairness

to the Trusts or Freidman's estate to dispense with duplicative alter-ego litigation here" because the issue was fully litigated, and that "[a]ny unfairness to the LLCs [wa]s not relevant" because "[t]heir property is not at stake here." Therefore, it granted GFJ's motion for a charging order against the Evelyn and Lindy Funding Trusts' distributional interests in the LLCs. The LLCs appealed.

¶ 8                                    II. ANALYSIS

¶ 9      On appeal, the LLCs argue that the trial court erred when it issued a charging order, which required the LLCs to turn over the distributions intended for the Evelyn Funding Trust and the Lindy Funding Trust to GFJ. GFJ responds that the LLCs lack standing and, in any event, that the charging order was properly entered. We address standing first, then turn to the merits.

¶ 10                                   A. Standing

¶ 11     Whether a party has standing to pursue an appeal is a question of law that we review *de novo*. *Davis v. Yenchko*, 2024 IL 129751, ¶ 16. The purpose of the doctrine of standing is to ensure "that issues are raised only by those parties with a real interest in the outcome of the controversy." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004).

¶ 12     For a party to have standing, there must be "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d. 462, 492 (1988); *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 280 (1989) ("a court must look at the party to see if he or she will be benefitted by the relief granted"). "More precisely, the claimed injury, whether 'actual or threatened' [citation] must be: (1) 'distinct and palpable' [citation]; (2) 'fairly traceable' to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citations]." *Greer*, 122 Ill. 2d. at 492-93. Lack of standing is an affirmative defense that the defendant bears the burden to plead and prove and is forfeited if not raised in a

4

timely manner in the circuit court. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). Unlike subject matter-jurisdiction, lack of standing may be forfeited if not raised in a timely manner in the trial court. *Id.*

¶ 13    As an initial matter, we find that GFJ forfeited its standing argument by raising it for the first time on appeal. GFJ did not challenge the LLCs' standing below; instead, it argued that the LLCs were "not even necessary parties to the Court's determination of whether to grant charging orders." Standing and necessary-party status are analytically different concepts. Standing concerns whether the litigant is the proper party to invoke the court's authority because it seeks to vindicate its "own legal rights and interests." See *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36. Whereas necessary-party status concerns whether an absent person or entity has a "present, substantial interest in the matter being litigated *** in whose absence a complete resolution of a matter in controversy cannot be achieved without affecting that interest." *American Freedom Insurance Co. v. Garcia*, 2021 IL App (1st) 200231, ¶ 36. GFJ's argument below went to the latter, not the former. Standing surfaced only in the LLCs' surreply to GFJ's motion for a charging order, where they affirmatively argued their own standing in response to GFJ's necessary-party claim—not in response to any standing challenge GFJ raised. Thus, the issue was never squarely before the circuit court. Because standing is an affirmative defense that must be raised below, GFJ forfeited the argument, and we decline to dismiss on that basis. See *Lebron*, 237 Ill. 2d at 252-53.

¶ 14    Even if the issue were preserved, the LLCs have standing, at least in part, because the charging order imposed obligations on them as third-party citation respondents. Section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2024)) governs supplementary proceedings to enforce a judgment and allows "[a] judgment creditor," such as GFJ, to issue citations "to discover assets" of the judgment debtor and to apply "assets or income discovered"

toward satisfaction of the judgment (*id.* § 1402(a)). Such proceedings are commenced when, at the judgment creditor's request, the clerk issues a citation to discover assets, which is then served upon the party sought to be examined. *Id.*; Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021). Thus, when a citation is served on a nonparty, that nonparty is brought before the court as a third-party citation respondent in the supplementary proceeding. See *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶¶ 1, 77. Service of the citation does not transform the respondent into a judgment debtor or a party to the underlying case; it merely subjects the respondent to limited discovery and turnover obligations. *Id.* ¶¶ 92-96; *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 314-15 (1989). GFJ followed this procedure after domesticating its $3,617,485.17 New York judgment in Illinois on December 6, 2023, serving the LLCs with third-party citations to identify any income or assets they held for the judgment debtor, Friedman's Estate. The LLCs thus occupy the role of third-party citation respondents here.

¶ 15     Moreover, section 2-1402 of the Code provides a court with broad powers, including the power to "[c]ompel any person cited *** to deliver up any assets so discovered, to be applied in satisfaction of the judgment" when those assets are of a type that the judgment debtor could recover from the nonparty in an ordinary action. 735 ILCS 5/2-1402(c)(3) (West 2024). An order requiring a third-party citation respondent to deliver such assets is generally referred to as a turnover order. See *Xcel Supply, LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 40. But where, as here, the judgment creditor seeks to reach distributions payable on a judgment debtor's distributional interest in a limited liability company, the specific remedy is a charging order under section 30-20(a) of the Limited Liability Company Act (Act) (805 ILCS 180/30-20(a) (West 2024)). See *Bank of America, N.A. v. Freed*, 2012 IL App (1st) 110749, ¶¶ 39-41. Section 30–20(a) of the Act authorizes the court, "[o]n application by a judgment creditor of a member or transferee," to "enter

a charging order against the distributional interest of the judgment debtor for the unsatisfied amount of the judgment." 805 ILCS 180/30-20(a) (West 2024). The order does not, however, give the judgment creditor broader rights with respect to the limited liability company's assets or affairs. See *id.*; *Freed*, 2012 IL App (1st) 110749, ¶ 41.

¶ 16     Both section 2-1402 of the Code and section 30-20(a) of the Act give the LLCs a basis to be heard here. Section 2-1402(g) of the Code provides that, where property or an interest in property is claimed by someone other than the judgment debtor, the court must permit or require that claimant "to appear and maintain his or her right." 735 ILCS 5/2-1402(g) (West 2024). Here, the charging order directs the LLCs to divert distributions they say do not belong to the judgment debtor. The LLCs say that the funds belong to the Trusts as independent members or, alternatively, that their obligation to make such distributions ended upon Friedman's death. Because the LLCs claim a present right to those distributions, they may contest the order on that limited ground.

¶ 17     Section 30-20(a) of the Act, in turn, authorizes relief only against "the distributional interest of the judgment debtor." 805 ILCS 180/30-20(a) (West 2024). In other words, the statute presumes both debtor ownership and a distribution owing on that interest. If either premise is missing, the remedy is unavailable. Because the order here assumes that the Estate holds such an interest and that distributions are forthcoming, the LLCs may contest whether those statutory predicates are satisfied and whether the charging order stays within the bounds that section 30-20(a) of the Act permits.

¶ 18     Although the LLCs have standing to be heard, that standing does not enlarge the narrow scope of a supplementary proceeding or guarantee that every objection they raise can be resolved in this forum. Supplementary proceedings under section 2-1402 of the Code are summary in nature and are "meant to provide a mechanism for a judgment creditor to discover assets of a judgment

debtor in order to satisfy an unpaid judgment." *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 23; 735 ILCS 5/2-1402 (West 2024).

> "However, 'nothing in the Code authorizes the entry of a judgment at a supplementary proceeding against a third party who does not possess assets of the judgment debtor.' (*Lange*, 232 Ill. App. 3d at 1081, 174 Ill. Dec. at 218, 598 N.E.2d at 415). Therefore, the only relevant inquiries in supplementary proceedings are (1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 623 (1994).

Thus, unlike an ordinary civil action, a supplementary proceeding is confined to the enforcement of an existing judgment and does not open the door to litigate every tangential dispute. Nor is it a vehicle to adjudicate collateral claims or impose liability independent of identifiable debtor property. See, *e.g.*, *Hayward v. Scorte*, 2020 IL App (1st) 190476, ¶ 27 (section 2-1402 authorizes only discovery and turnover of the debtor's assets, not resolution of collateral claims); *Lange v. Misch*, 232 Ill. App. 3d 1077, 1080-82 (1992) (citation proceeding may not impose liability on a third party absent proof that the party holds debtor assets).

¶ 19    The LLCs' opposition exceeded the permissible scope of this supplementary proceeding. In response to GFJ's citations, the LLCs stated that they did not hold assets of the judgment debtor because the Evelyn and Lindy Funding Trusts, not Freidman or his Estate, were the LLCs' members. In support, the LLCs disclosed documents showing that the Trusts held 50% membership interests in the LLCs. Relying on that disclosure and the New York alter-ego determination, GFJ moved for a charging order treating the Trusts' distributional interests as property attributable to Freidman. At that point, the relevant inquiry was limited to whether the

LLCs held distributions payable on a distributional interest that could be treated as belonging to the Estate as the judgment debtor, and whether the proposed charging order stayed within the limits of section 30-20(a) of the Act.

¶ 20    Much of the LLCs' opposition below, however, was directed to matters beyond that inquiry. The LLCs argued that the New York judgment did not establish alter-ego status for purposes of this proceeding, that GFJ failed to satisfy the requirements for offensive collateral estoppel, and that veil-piercing is categorically unavailable in supplementary proceedings. To the extent those arguments seek to relitigate the New York alter-ego determination, contest the merits of that judgment, or assert defenses belonging to the Trusts or the Estate, they exceed the LLCs' limited role as third-party citation respondents. They do not, in themselves, concern the LLCs' own obligations under the charging order or whether the LLCs presently hold distributions payable on a judgment debtor's distributional interest. See *Pyshos*, 258 Ill. App. 3d at 623 (supplementary proceedings concern whether the debtor possesses assets that should satisfy the judgment or whether a third party holds those assets); 805 ILCS 180/30-20(a) (West 2024) (limiting a charging order to "the distributional interest of the judgment debtor"). Thus, while the LLCs may challenge whether the charging order properly reaches distributions subject to section 30-20(a) of the Act, they may not use this supplementary proceeding to mount a collateral attack on the New York judgment or to obtain a new veil-piercing adjudication.

¶ 21    However, the LLCs' termination argument is different. The LLCs argued below, and again on appeal, that even if the Trusts' interests are treated as attributable to Freidman, any membership interest Freidman held terminated upon his October 2021 death under section 9.3(a) of the operating agreements, leaving no distributional interest to charge. That contention, if correct, bears

directly on whether any distributional interest of the judgment debtor exists to which the charging order may attach, and it therefore falls within the LLCs' limited standing to object.

¶ 22    But the termination argument, as framed by the parties, cannot be finally resolved within the summary confines of this citation proceeding. A court would first need to interpret the New York alter-ego finding. If that finding merely authorizes GFJ to reach distributions payable to the Trusts, the Trusts would remain the LLC members. If, instead, it treats Friedman or his Estate as the member, the court would next have to decide (i) whether Friedman's death terminated the interest under section 9.3(a) of the operating agreements, (ii) whether any economic right survived that termination, and (iii) whether the Trusts still hold enforceable distributional rights. These questions implicate the rights of parties beyond the LLCs, including the Trusts and the Estate, and are not suited for final resolution in a summary supplementary proceeding.

¶ 23    At oral argument, the parties confirmed that the termination issue cannot be resolved on its face as they took two competing views. The LLCs argue that the New York decision effectively disregards the Trusts' ownership under section 9.3(a) of the operating agreements and attributes it to Freidman or the Estate; GFJ responds that the Trusts remain members whose distributional interests may be reached. We express no opinion on which view is correct because that dispute is not properly before us in this appeal and falls outside the limited scope of this supplementary proceeding.

¶ 24    Such a dispute instead belongs in a plenary proceeding. While the LLCs were free to respond to the citations by asserting they held no debtor assets, once they relied on the premise that any interest attributable to Freidman terminated at his death, the matter required a proceeding capable of binding all affected parties. A declaratory judgment action could resolve whether any membership or distributional interest survived Freidman's death, whether the Trusts remain

operative members, and whether any distributions are subject to a charging order. See 735 ILCS 5/2-701(a) (West 2024) ("[t]he court may, in cases of actual controversy, make binding declaration of rights *** including *** the construction of any *** contract or other written instrument"). The supplementary proceeding could then be stayed or otherwise managed pending the outcome of that plenary determination.

¶ 25    That is essentially the course the circuit court left open. The court allowed the LLCs to present their termination objection, consistent with section 2-1402(g) of the Code's authorization for a claimant to "appear and maintain" its claimed right. See *id.* § 2-1402(g). But the court declined to finally adjudicate that theory in the citation proceeding, observing that the claim was not properly before it and that the LLCs could "pursue their theory that the membership interests reverted to them upon Freidman's death" in a separate action. Given the limited function of Code section 2-1402 proceedings, that limitation was appropriate.

¶ 26    At oral argument, the LLCs maintained that, because the judgment creditor bears the burden in a Code section 2-1402 proceeding to show that a third party holds assets of the judgment debtor, GFJ likewise bore the burden of filing a separate declaratory judgment action to resolve the termination issue. It is true that GFJ bore the burden of establishing a basis for relief in the citation proceeding. See *Kauffman*, 2015 IL App (2d) 150285, ¶ 26. But that burden did not convert the summary citation proceeding into a forum for finally adjudicating the competing ownership and contractual issues embedded in the LLCs' termination theory. See *Hayward*, 2020 IL App (1st) 190476, ¶ 27; *Lange*, 232 Ill. App. 3d at 1080-82. Once the LLCs asserted that any interest attributable to Freidman had terminated upon his death, they raised an ownership dispute not apparent from the citation record. That dispute could have been placed in a plenary posture by either party—and the LLCs, as the party asserting the claimed right, were best positioned to do so.

We express no opinion on which party bore that obligation. We hold only that the dispute could not be finally resolved within this supplementary proceeding.

¶ 27     Accordingly, the LLCs had standing to object to the charging order only insofar as it compelled them to divert distributions they claim are not payable on a judgment-debtor interest. That limited standing did not entitle them to use this citation proceeding to attack the New York judgment, assert defenses belonging to the Trusts or the Estate, or obtain a final ruling on ownership and termination issues under the operating agreements. Their role is confined to whether they hold assets of the judgment debtor or whether the charging order exceeds its statutory bounds.

¶ 28     Having defined the LLCs' limited role in this proceeding, we next consider whether the circuit court properly gave it preclusive effect when entering the charging order. Our conclusion that the LLCs may not use this supplementary proceeding to collaterally attack that judgment does not foreclose our review of the legal basis for the charging order. The order rests on the circuit court's decision to give effect to the New York alter-ego determination for the limited purpose of treating the Trusts' distributional interests as property attributable to the judgment debtor. We therefore consider only whether the circuit court could properly rely on that prior determination for that purpose. We do not revisit the merits of the New York judgment, conduct a new veil-piercing analysis, or resolve defenses belonging solely to the Trusts or the Estate.

¶ 29                                         B. Collateral Estoppel

¶ 30     The LLCs raise several objections to the circuit court's use of collateral estoppel to preclude them from arguing they hold no property of the judgment debtor. We address those objections in the course of applying the doctrine and conclude that none warrants reversal.

¶ 31    The applicability of the doctrine of collateral estoppel is a question of law we review *de novo*. *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 28. "However, once the trial court has determined that the threshold requirements for collateral estoppel have been met *** the trial court must determine whether to apply the doctrine and has broad discretion, particularly in cases of nonmutual offensive collateral estoppel ***." *Id.* "This determination requires an exercise of discretion and is reviewed for abuse of discretion." *Id.*

¶ 32    The minimum threshold requirements for collateral estoppel are that (1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 390 (2001). In addition, even where those requirements are satisfied, the court must consider whether application of the doctrine would be fundamentally unfair. See *id.* at 391; *In re Owens*, 125 Ill. 2d 390, 399 (1988).

¶ 33    As a threshold matter, the LLCs contend that GFJ did not expressly invoke collateral estoppel below and therefore the circuit court erred by treating GFJ's request for a charging order as one sounding in offensive collateral estoppel. We reject that contention. Courts are not bound by the labels parties attach to their arguments and instead look to their substance. See *In re Haley D.*, 2011 IL 110886, ¶ 67. Here, GFJ argued below that the New York bankruptcy court had already determined that the Evelyn and Lindy Funding Trusts were Freidman's alter egos and that this determination was binding and entitled GFJ to a charging order against the Trusts' distributional interests in the LLCs. That was, in substance, a request to preclude relitigation of the alter-ego issue. See *In re Owens*, 125 Ill. 2d at 397 ("Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously

litigated unsuccessfully in another action."). Thus, the circuit court did not err in characterizing the argument as such simply because GFJ failed to use the term of art in its motion.

¶ 34                                    1. *Identity of Issues*

¶ 35     The issue decided in the prior New York proceeding is identical to the one presented here: whether the Evelyn Funding Trust and the Lindy Funding Trust hold assets belonging to Freidman such that those assets are subject to collection by his creditors. That issue was actually litigated and decided in *In re Hypnotic Taxi, LLC*, 2017 WL 4464876. There, the court found that Freidman owned interests in numerous "Investment Entities," including the LLCs involved in this appeal (*id.* at *2-4); Freidman created numerous trusts, including the Evelyn and the Lindy Funding Trusts, and transferred his interests in those entities to the trusts (*id.* at *3-4), of which he was found to be "the grantor, protector, a beneficiary," was "on all sides of the transfer," and "controlled every aspect of this transaction for his benefit" in order to place those assets beyond the reach of his creditors (*id.* at *10); the transfers "were made with the intent to hinder, delay, or defraud creditors" and therefore "may be disregarded" (*id.* at *9); and Freidman exercised control over the trusts such that they operated as his alter egos (*id.* at *10-14).

¶ 36     GFJ relied on those same determinations below for the same collection purpose. In a supplementary proceeding, the relevant inquiry is whether the judgment debtor possesses assets, or whether a third-party holds assets of the judgment debtor, that may be applied toward satisfaction of the judgment. See *Pyshos*, 258 Ill. App. 3d at 623. The New York court had already determined that the Trusts' separate form could be disregarded because the Trusts operated as Freidman's alter egos and held interests reachable by his creditors. *In re Hypnotic Taxi, LLC*, 2017 WL 4464876, at *9. GFJ invoked that determination here to establish that the Trusts, as third parties, held distributional interests in the LLCs attributable to Freidman and therefore subject to

14

collection. Although the New York proceeding and the current Illinois proceeding involved different collection mechanisms, the material question in both proceedings was the same: whether assets held by the Trusts should be treated as the debtor's own and applied to satisfy his creditors. The identity-of-issues requirement is therefore satisfied.

¶ 37    The LLCs respond that the facts in this case vary too significantly to permit collateral estoppel. They first contend that the New York proceeding concerned "transfers from the New York Residence Trusts," which did not involve the LLCs. That argument reads the New York decision too narrowly. The bankruptcy court found a series of related transfers in which the New York Residence Trusts conveyed certain New York residential properties into newly formed Residential LLCs owned by Freidman, after which Freidman transferred his ownership interests in those Residential LLCs to offshore asset-protection trusts, including the Evelyn and Lindy Funding Trusts. *Id.* Around the same time, Freidman also transferred his interests in numerous Investment Entities, including the Illinois LLCs involved in this appeal, to those same trusts. *Id.* at \*2 & n.2. Referring to the Residential LLCs and Investment Entities together as "Real Estate Entities," the court found that all such transfers were made with fraudulent intent. *Id.* at \*4, \*9. Thus, the operative issue there was not limited to whether particular New York property had been fraudulently transferred. It was whether Freidman's entity interests, including his interests in the Illinois LLCs, could be treated as trust-held interests reachable by creditors. That is the same issue presented here.

¶ 38    Second, the LLCs claim that the New York court's alter ego finding hinged on Freidman's personal use of the New York residential properties and that no similar finding was made about the Illinois LLCs. That claim is a red herring. The residential properties were merely one part of a larger scheme. Freidman moved those properties into new Residential LLCs and then transferred

his interests in those LLCs—together with his interests in numerous Investment Entities, including the Illinois LLCs now before us—to offshore trusts such as the Evelyn and Lindy Funding Trusts. *Id.* at *2 & n.2. The bankruptcy court mentioned Freidman's continued use of the residential properties only to illustrate his ongoing control; it did not make such personal use a prerequisite to its alter-ego finding. The material finding was that Freidman transferred his ownership of all the Real Estate Entities into the Trusts, yet he still controlled them and reaped the benefits. *Id.* at *9-14. In applying that determination here, GFJ did not seek to prove that Freidman dominated the LLCs themselves or personally used their property. It sought to reach the Trusts' distributional interests in the LLCs, based on the prior determination that the Trusts were Freidman's alter egos.

¶ 39    Third, the LLCs contend that the New York court's finding was limited to Citibank because former section 278 of the New York Debtor and Creditor Law provided that, "[w]here a conveyance or obligation is fraudulent as to a creditor, *such creditor*, when his claim has matured," may set aside the conveyance or disregard it and levy upon the property conveyed. (Emphasis added.) N.Y. Debt. & Cred. Law § 278(1) (McKinney 2016) (section 278 was later repealed and replaced (see 2019 Sess. N.Y. Laws, ch. 580, § 2 (eff. Apr. 4, 2020) (McKinney))). They read the phrase "such creditor" to mean that Citibank, and not Sterling Bank or GFJ, was the only party entitled to rely on the New York findings. We disagree. By its plain terms, former section 278(1) simply described the remedy available *after* a conveyance was found fraudulent; it did not limit the underlying finding of fraudulent intent to a single creditor. See *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 132 (1986) (describing former section 278 as a remedial, not punitive, mechanism that allows a creditor to obtain what is due despite a debtor's attempt to avoid payment). That intent determination is governed by former section 276 of the New York Debtor and Creditor Law, which declared that a conveyance made with intent to "hinder, delay, or defraud

either present or future creditors" is fraudulent "as to both present and future creditors." N.Y. Debt. & Cred. Law § 276 (McKinney 2016) (section 276 was later repealed and replaced (see 2019 Sess. N.Y. Laws, ch. 580, § 2 (eff. Apr. 4, 2020) (McKinney))); see *JR&J Holding Co. v. Rabinowitz*, 607 N.Y.S.2d 724, 725 (App. Div. 1994) (describing former section 276 as reaching conveyances intended to defraud future creditors, including those made before the plaintiff's claim arose).

¶ 40    The New York bankruptcy court found that Freidman's transfers of his interests in the Real Estate Entities to the Trusts were made "with intent to hinder, delay, or defraud creditors," without restricting the finding to Citibank. *In re Hypnotic Taxi, LLC*, 2017 WL 4464876, at *9. GFJ, as a successor judgment creditor, invokes that same finding to reach the Trusts held interests; it is not litigating a separate transfer involving Sterling Bank or Sterling's creditor status. Thus, nothing in the applicable statute precludes GFJ from relying on the New York determination.

¶ 41    The LLCs also separately contend that the issues are not identical because New York's veil-piercing standard differs from Illinois's standard. That argument also does not defeat preclusion. The operative legal principle implicated here is the same in both states: a debtor may not shield assets from creditors by placing them in a self-settled trust created for his own benefit. Compare 735 ILCS 5/2-1403 (West 2024) (providing that assets held in trust for the benefit of a judgment debtor are shielded from creditors only where the trust was created, in good faith, by a person other than the judgment debtor), with N.Y. Est. Powers & Trusts Law § 7-3.1(a) (McKinney 2025) ("A disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator."). Any difference in the states' veil-piercing formulations does not alter the relevant issue decided in the New York proceeding: whether Freidman transferred his interests to the Trusts to place those assets beyond his creditors' reach.

¶ 42                                  2. *Final Judgment*

¶ 43    The LLCs do not dispute that the alter-ego determination was included in a final judgment

on the merits. The New York court's proposed findings were adopted in their entirety by the United

States District Court for the Eastern District of New York on October 12, 2018. Although the alter-

ego finding originated as an interlocutory ruling, interlocutory orders merge into the final judgment

for purposes of preclusion. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195

Ill. 2d 71, 85-86 (2001) ("interlocutory orders rendered in a case typically merge with the [final]

judgment for purposes of appellate review"); *Amara v. Cigna Corp.*, 53 F.4th 241, 248 (2d Cir.

2022) (same). The second element is satisfied.

¶ 44                                  3. *Party of Privity*

¶ 45    The third element is also satisfied. The party against whom estoppel is asserted must have

been a party to, or in privity with a party to, the prior adjudication. *Du Page Forklift*, 195 Ill. 2d at

77. For purposes of this requirement, the relevant inquiry focuses on the party against whom the

prior determination is being given preclusive effect. Here, GFJ did not seek to bind the LLCs to a

prior adjudication of their own liability or ownership of their own property. Rather, GFJ relied on

the New York court's findings to establish, as against Freidman's Estate and the Trusts, that the

Trusts' distributional interests may be treated as property attributable to Freidman for collection

purposes.

¶ 46    The Estate is bound by the New York findings to the same extent Freidman would have

been. Privity encompasses relationships that are " 'explicitly representative,' " including those of

"the executor, administrator, guardian, conservator, or similar fiduciary manager of an interest in

which the nonparty is a beneficiary." *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet

Metal Co.*, 394 Ill. App. 3d 548, 559 (2009). The Estate is the legal successor-in-interest to

Freidman's liabilities, and its administrator stands in a representative capacity with respect to the very obligations and findings at issue in the New York proceeding.

¶ 47 The LLCs argue that estoppel cannot apply because they were not parties to the New York proceeding. But GFJ is not using the New York bankruptcy ruling to impose liability on the LLCs or adjudicate ownership of their property. It is using that ruling against Freidman and his privy, the Estate, to establish that their distributional interests in the Trusts are reachable to satisfy the judgment. Creditors, like GFJ, cannot seize LLC property via a charging order to satisfy a members' debt and, instead, "can only attach the member's distributional interest in the LLC because that is all the member owns." *Peabody-Waterside Development, LLC v. Islands of Waterside, LLC*, 2013 IL App (5th) 120490, ¶ 9. Accordingly, the LLCs' absence from the New York proceeding does not defeat the privity requirement.

¶ 48 The LLCs further contend that collateral estoppel is unavailable here because the New York judgment was entered in favor of Citibank, not Sterling or GFJ. They maintain that only a party, or one in privity with a party, that prevailed previously may invoke collateral estoppel. We disagree; the underlying premise misstates the law. Neither Illinois nor New York requires mutuality of parties for collateral estoppel. See *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 460-61 (1996) (noting the elimination of the mutuality requirement; offensive estoppel available as long as threshold elements are met); *In re Owens*, 125 Ill. 2d at 397-400 (same); see also *Downtown Acupuncture PC v. State Wide Insurance Co.*, 21 N.Y.S.3d 548, 554-55 (Civ. Ct. 2015) ("Collateral estoppel may be invoked offensively as a sword in subsequent litigation by a non-party to the prior litigation, provided that the party seeking to apply collateral estoppel can show that his opponent participated in the prior litigation and had a full opportunity to litigate the action on its merits."); *A to Z Associates v. Cooper*, 613 N.Y.S.2d 512, 516-17 (Sup. Ct. 1993) (same).

19

The inquiry instead focuses on the party against whom estoppel is asserted and whether that party previously had a full and fair opportunity to litigate the issue. Here, the findings are invoked against Freidman's Estate and the Trusts—entities that fully litigated alter-ego status in the New York proceeding. Therefore, the mere fact that GFJ is a successor judgment creditor in the present proceedings does not defeat preclusion.

¶ 49                                    4. *No Unfairness*

¶ 50     Finally, the circuit court did not abuse its discretion in applying collateral estoppel. Offensive collateral estoppel must be applied cautiously, and circuit courts are afforded broad discretion to ensure that such an application is not fundamentally unfair to the defendant. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 296 (1995); *In re Owens*, 125 Ill. 2d at 397-99.

¶ 51     Here, there is no unfairness to the Trusts or the Estate in dispensing with duplicative alter-ego litigation. The issue was fully and thoroughly litigated in the New York proceedings, in which both Freidman and the Trusts were represented by counsel during a three-day trial; presented evidence; and had a full and fair opportunity to contest the determination. *In re Hypnotic Taxi LLC*, 2017 WL 4464876. The issue was decided against them on the merits. Permitting relitigation of that same issue here would contravene the core purpose of issue preclusion. *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 38 (purpose of collateral estoppel "is to promote fairness and judicial economy by barring relitigation of issues already resolved in earlier actions").

¶ 52     The LLCs' unfairness arguments do not change the result. Their principal claim reprises their termination theory: if the Trusts are Freidman's alter egos, his membership interests terminated at death and no distributions remain. But again, that argument conflates the effect of the alter-ego finding with a separate ownership dispute outside the proper scope of supplementary proceedings. The New York judgment established only that the Trusts' distributional interests may

be treated as Freidman's property for collection; it did not decide whether those interests later terminated under the operating agreements. That ownership question, if pursued, belongs in a separate plenary action—not in this supplementary proceeding. See 735 ILCS 5/2-1402 (West 2024); 805 ILCS 180/30-20(a) (West 2024).

¶ 53    Moreover, any claim that the charging order is itself unfair is of no moment because the order neither altered ownership nor conferred management rights on GFJ. It simply attached to whatever distributional interests the Trusts hold, consistent with section 30-20(a) of the Act, which grants a creditor no rights "with respect to the assets or affairs of the company." 805 ILCS 180/30-20(a) (West 2024); see *Freed*, 2012 IL App (1st) 110749, ¶ 41 ("an Illinois LLC has no interest that is affected when a charging order is entered on a judgment debtor's distributional interest because the party in whose favor the charging order is entered is not an owner of the LLC and has no authority over the LLC's affairs and can only receive distributions").

¶ 54    The LLCs also contend that applying collateral estoppel could expose them to double payment and impair their ability to assert setoffs against distributions payable to the Trusts. Those concerns are speculative and are largely unrelated to any collateral estoppel determination. Such claims arise from the Trusts' absence from this proceeding and from the LLCs' asserted rights under the operating agreements, not from the application of collateral estoppel to the prior New York alter-ego finding. In any event, they do not demonstrate that applying collateral estoppel was unfair or that the circuit court abused its discretion.

¶ 55            C. The Scope of the Supplementary Proceeding Below

¶ 56    The LLCs next argue that the charging order must be reversed because Illinois courts do not permit veil piercing in supplementary proceedings and cite a number of cases to that effect. See, *e.g.*, *Lange*, 232 Ill. App. 3d at 1082 (veil piercing improper in a supplementary proceeding;

separate petition required); *Pyshos*, 258 Ill. App. 3d at 623 (supplementary proceedings limited to determining whether the judgment debtor possesses assets subject to the judgment or whether a third party holds such assets); *Hayward*, 2020 IL App (1st) 190476, ¶ 35 (same); *Star Insurance. Co. v. Risk Marketing Group Inc.*, 561 F.3d 656, 660-61 (7th Cir. 2009) (same).

¶ 57    While we agree with *Lange* and its progeny that veil piercing generally may not be litigated in a supplementary proceeding, that is not what occurred here. As a matter of fact, the circuit court did not pierce the Trusts' veils. Rather, the alter-ego determination had already been made in a fully litigated New York proceeding, where the court found that the Trusts were Freidman's alter-egos and held interests reachable by his creditors. The circuit court gave that prior determination preclusive effect and then applied it to the issue properly before it in supplementary proceedings: whether the Trusts' distributional interests in the LLCs were attributable to Freidman and could be applied toward satisfaction of the judgment. See *Pyshos*, 258 Ill. App. 3d at 623; 735 ILCS 5/2-1402 (West 2024).

¶ 58    The concern animating the line of cases cited by the LLCs is that supplementary proceedings do not have the inherent authority to adjudicate new veil-piercing claims, which are fact-intensive and fall outside the narrow scope of those proceedings. See, *e.g.*, *Hayward*, 2020 IL App (1st) 190476, ¶ 36 (observing the "plaintiffs' frustration" in attempting to find whether third party had assets of judgment debtor); *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 415 (2003) ("a supplementary proceedings judge lacks authority to adjudicate the merits of corporate veil allegations"); *Pyshos*, 258 Ill. App. 3d at 623 (same); *Lange*, 232 Ill. App. 3d at 1081 (same). That concern is not implicated here. The circuit court did not conduct a new fact-intensive veil-piercing inquiry; it gave preclusive effect to an issue already decided in the New York proceeding, where the Trusts and Freidman were represented by counsel and litigated the matter on the merits.

22

The court then used that determination to decide whether the Trusts held assets of the judgment debtor. That application of collateral estoppel therefore did not exceed the scope of the supplementary proceeding.

¶ 59    To hold otherwise would insulate a prior alter-ego determination from preclusive effect simply because enforcement is sought through supplementary proceedings—a result unsupported by Illinois law. Section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2024)) and Illinois Supreme Court Rule 277 (eff. Oct. 1, 2021) govern supplemental proceedings and give the circuit court broad authority to "compel the application of discovered assets or income to satisfy a judgment." *Kennedy v. Four Boys Labor Service, Inc.*, 279 Ill. App. 3d 361, 367 (1996). Once the citation proceedings revealed that the Trusts held distributional interests attributable to Freidman, the court could give preclusive effect to the prior alter-ego finding and enter a charging order against those relevant interests. It follows that the circuit court acted within the scope of its authority and, thus, the charging order shall stand.

¶ 60                                    III. CONCLUSION

¶ 61    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 62    Affirmed.

*GF Judgments LLC v. Estate of Freidman*, 2026 IL App (1st) 250546

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-L-050646; the Hon. James E. Hanlon Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Bruce N. Menkes, of Menkes Law LLC, and Bryan G. Lesser, both of Chicago, for appellants. |
| **Attorneys for Appellee:** | Jill C. Anderson and Tina C. Wills, of Smith, Gambrell & Russell, LLP, of Chicago, for appellee. |